PHILIP S. BRAYTON, administrator, *vs.* EMMA F. STOUGHTON & others.

Bristol.    October 29, 1956. — January 30, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Descent and Distribution.    Executor and Administrator,* Distribution, Counsel fees.  *Probate Court,* Counsel fees.

Upon distribution of the estate of an intestate who died in 1942 leaving a widow and heirs surviving him but no issue and an estate exceeding $5,000 in value, which at the time of distribution some years later had increased greatly in value, the shares of the widow and heirs under G. L. (Ter. Ed.) c. 190, § 1, as in effect in 1942, must be determined as of the time of distribution, so that the widow would receive $5,000 and one half of the remaining estate at its increased value and the heirs would receive the other half of the remaining estate at its increased value; the shares were not to be computed by ascertaining the

---

percentages which the widow and the heirs would respectively have received on the basis of a distribution as of the date of the decedent's death and the then value of the estate, and by applying the same percentages to the increased value of the estate at the time of distribution.  [323–324]

In the circumstances, an allowance of counsel fees and expenses under G. L. (Ter. Ed.) c. 215, § 39A, from an intestate's estate generally to counsel representing certain heirs was proper where it appeared that the conduct of the intestate's widow as administratrix, who failed to complete the administration by distribution and accounting before her death twelve years after the death of the intestate, made necessary counsel's services in obtaining an accounting by petition and in litigation involving the question of the proper determination of the respective distributive shares of the widow and the other heirs in view of a substantial increase in the value of the estate during the twelve years, and that the ultimate result of the litigation was beneficial to all the distributees other than the widow's estate.  [326–327]

PETITION, filed in the Probate Court for the county of Bristol on August 23, 1955.

The case was heard by *Mullaney, J.*

*Maurice J. Levy,* for Emma F. Stoughton and others.

*Harold S. R. Buffington & Ray C. Westgate,* for Fuller, administrator, submitted a brief.

*Philip S. Brayton,* administrator, submitted a brief.

SPALDING, J.   This is a petition for distribution of the estate of John J. Haythornthwaite, late of Fall River.  The judge made findings of material facts.  Facts not in dispute and those found by the judge are as follows: John J. Haythornthwaite died intestate on January 5, 1942.  He left no issue but was survived by his widow, Blanche W. Haythornthwaite, and by the following heirs: two sisters, a brother, and several nieces and nephews who were the children of deceased brothers and sisters.  His widow was appointed administratrix of his estate on January 9, 1942.  She died on August 12, 1954, without having filed either an inventory or an account.[1]   An account concerning her administration of the estate was filed after her death when some of the heirs petitioned for an accounting.  As of the date of

---

[1] The judge found that the "illness and death of the attorney who probated the estate of John J. Haythornthwaite was probably responsible for the failure of the administratrix to distribute the estate."

his death in 1942 Haythornthwaite's estate had an inventory value of $11,544.79, and after payments of debts a value of $10,769.29. There was no real estate. If distribution had been made as of the date of death the widow would have been entitled to $5,000 (under the statute then applicable) and one half of the remainder, or $7,884.65, and her husband's heirs would have shared in the balance of $2,884.64. On a percentage basis under such a distribution the widow's share would have amounted to 73.2% and the heirs' share to 26.8%.

During the period between 1942 and 1954 the value of Haythornthwaite's estate, due to dividends and the appreciation of securities, increased to $29,482.50. His widow, however, during this period was using funds of the estate for living expenses. The amount so used was $14,581.29, with the result that the net amount of the estate remaining for distribution to the estate of the widow and to the heirs is $14,901.21. This amount appears in schedule C of the account of the administrator de bonis non of Haythornthwaite's estate.

The administrator brought this petition for distribution and submitted the following plan of distribution: The percentage of the estate to which the estate of the widow and the heirs are respectively entitled is to be established as of the date of Haythornthwaite's death. In other words, the proportionate shares that the widow's estate and the heirs would receive were calculated on the basis of the net value of the estate at that time. These percentages which, as stated above, would give to the widow 73.2% of the estate and to the heirs 26.8% were then to be applied to $29,482.50, the increased value of the estate. This plan was adopted by the court. Under this plan the widow's share of the $29,482.50 was $21,581.19 and the heirs' share was $7,901.31. Since, however, the widow had used $14,581.29 of her share, the amount payable to her was reduced to $6,999.90. From a decree entered in accordance with the plan and from the denial of their counsel's motion for compensation and expenses, the heirs appealed.

1. The heirs argue that the plan of distribution adopted by the judge was erroneous. It is their position that the respective shares of the widow and the heirs should be determined as of the time of distribution. Thus under this method the widow's estate would be entitled to $5,000 plus one half of $24,482.50 (the remainder of the estate after deducting $5,000), or $17,241.25. Deducting from this sum the $14,581.29, which she had used, the amount to be paid to her estate would be $2,659.96. This would be $4,339.94 less than her estate would receive under the decree below, and the heirs' share would be increased by that amount.

We are of opinion that the contention of the heirs must be sustained and that the shares must be determined as of the time of distribution. See *Plympton* v. *Plympton*, 6 Allen, 178, 181. Under G. L. (Ter. Ed.) c. 190, § 1[1], as it read in 1942, if the deceased left kindred and no issue the widow would take $5,000 plus one half of the remaining real and personal property. In the normal course of events, distribution would take place in approximately one year after death. At that time the widow would be entitled to receive $5,000 plus one half of the remaining property. And in such a case any income from or appreciation to the property would benefit the widow, but only to the extent of her interest in the property in excess of the $5,000. The precise question does not appear to have been decided but the case of *Sullings* v. *Richmond*, 13 Allen, 277, furnishes an analogy. There a widow elected to waive the provisions of her husband's will and claim her rights under St. 1854, c. 428. This statute provided that a widow was entitled to such portions of the real and personal property as she would have received if her husband had died intestate; but in no event was she to receive more than $10,000. Settlement of the estate was delayed by reason of litigation, during which time the value of the estate increased. The widow applied for an allowance of the proportionate share of this increase belonging to the distributive share of the estate to which

[1] See now St. 1956, c. 316, § 1, under which the widow receives *$25,000* plus one half the remaining real and personal property.

she would have been entitled if the decree of distribution had been made immediately after her husband's death, or as soon thereafter as it would have been made but for the litigation. In rejecting this contention and holding that the widow was entitled to no more than $10,000 the court said at pages 279–280, "This right [to waive the provisions of the will and take under the statute], we think, is to be enjoyed at the time of the decree of distribution. It is said that the share of a distributee of personal estate vests at the death of the intestate; and that, so far as the widow is concerned, she takes as if her husband had died intestate. This is true to a certain extent. Her share in his estate is so far vested that it will pass to her personal representative in case of death, and is assignable in her lifetime. It is a present interest in property. But it is not a right to receive any specific property or sum of money, until after a decree of distribution. When the estate is settled, so that a distribution can be made, it is the duty of the executors to pay according to the decree of the probate court. Until such a decree is made they are in no default; and they can only pay according to the decree. In making the decree for distribution, the probate court must be governed by the statute, and could not order payment of a larger sum than ten thousand dollars to be made to the widow."

We recognize that the statute construed in *Sullings* v. *Richmond* is different in that it limits the widow to not more than $10,000 in any event, whereas the statute under consideration allows the widow $5,000 plus one half of the remaining property. However, the case expressly holds that the widow was not entitled to income or appreciation on the specific sum of $10,000. And the reasoning of the court indicates that the significant date in determining the widow's share of the estate is the date of actual distribution.

We think that the widow's estate in the case at bar is not entitled to the income from or appreciation to the specific sum of $5,000. She is entitled to share in the increase in the estate only to the extent that it may accrue to her at the time of distribution as recipient of one half the remaining

estate of her husband. See also *Atherton* v. *Corliss*, 101 Mass. 40, 48; *Pollock* v. *Learned*, 102 Mass. 49, 55–56.

Cases such as *Spring* v. *Curry*, 260 Mass. 556, and *Naylor* v. *Nourse*, 231 Mass. 341, relied on by the administrator of the widow's estate, are not in conflict with our conclusion here. Those cases dealt with a situation where the husband's estate was less than $5,000 and under R. L. c. 140, § 3, Third (the predecessor of c. 190, § 1), there being no issue, the widow was entitled to the whole estate on the death of her husband. Obviously, since she was entitled to the whole estate the income or appreciation thereof belonged to her. See also *Seavey* v. *O'Brien*, 307 Mass. 33; *Green* v. *Gilmore*, 331 Mass. 283.

2. Counsel for the appealing heirs presented a motion presumably under G. L. (Ter. Ed.) c. 215, § 39A, inserted by St. 1947, c. 536, as amended by St. 1951, c. 80, for counsel fees and expenses which was denied by the judge on the ground that "no benefit to . . . [the estate of the widow or to the estate of her husband] resulted by these actions, and in each estate the heirs are in a position to pay the attorneys representing them." Doubtless the judge concluded that under our decision in *Miller* v. *Stern*, 326 Mass. 296, the motion ought not to be allowed. But in view of the decree of distribution which will result from this opinion we think that the situation is one where counsel fees ought to be allowed out of the estate generally. In *Miller* v. *Stern* we held that counsel for a contestant to the allowance of a will was not entitled under G. L. (Ter. Ed.) c. 215, § 39A, to be paid for his services from the estate generally and that he must look to his clients for payment. We there stated that ordinarily payment of counsel fees from the estate generally may be directed only when the services were rendered to the estate or its representative. But we said at page 304, "Cases may occur where through the efforts of counsel for a beneficiary the general estate has been benefited, as where counsel has been successful in creating, preserving, or increasing the estate, and it may be that in such cases the court could properly under § 39A order that coun-

sel be paid out of the general estate." Here the estate cannot be said to have been created, increased or preserved by the activities of the appealing heirs. But they were obliged to resort to litigation for reasons which were attributable solely to the conduct of the widow. Had Haythornthwaite's estate been administered seasonably it would not have been necessary for the appealing heirs to petition, as they did, for an accounting, and the other questions here involved would probably not have arisen. Moreover, because of the services of counsel for the appealing heirs all of the distributees of the estate, except the estate of the widow, have benefited. In these circumstances we think that fairness requires that these services should be paid for out of the estate generally. The only distributee not benefited is in no position to complain. Counsel for the heirs should have the right to make another application for compensation and expenses. The amount of the allowance, of course, is to be determined by the judge.

The decree on the petition for distribution is reversed and a new decree is to be entered in conformity with this opinion.

*So ordered.*