**In re Ronald W. McNEILL and Patricia A. McNeill, Debtors.**

**Bankruptcy No. 095–72262–511.**

United States Bankruptcy Court, E.D. New York.

March 20, 1996.

Steven J. Vadala, Brentwood, New York, for Debtors.

Zavatsky & Mendelsohn, L.L.P. by Michael O'Sullivan, Syosset, New York, for Chapter 7 Trustee.

### DECISION AND ORDER

(Trustee's Objection to Exemption)

MELANIE L. CYGANOWSKI, Bankruptcy Judge:

Before the Court is an objection timely filed by the Chapter 7 Trustee, Allan B. Mendelsohn (the "Trustee"), to an exemption claimed by the Debtors, Ronald W. and Patricia A. McNeill. By Memorandum Decision and Order dated January 18, 1996, the Court requested additional briefing by the parties. Both parties have now filed their memoranda of law. The salient facts are undisputed and set forth in the Court's January 18 Memorandum Decision. Briefly, they are as follows:

On September 30, 1989, the mother of Ronald McNeill, Isabella McNeill won the Massachusetts Lottery, entitling her to receive $53,298 per year for twenty years. Shortly thereafter, she executed a last will and testament which left her estate to her four children equally.[1] In June, 1993, Isabella McNeill died, and her daughter, Betty Anderson, became executrix of her estate.

Her estate filed an estate tax return in Massachusetts, paying tax on the entire lottery proceeds, past and future. Notwithstanding the payment of the tax, the estate actually receives a check from the Massachusetts Lottery once a year, and distributes the proceeds pursuant to the will. The annual distribution to Ronald McNeill is in the sum of $8,081, or $673 per month, which will continue for another eighteen (18) years.

On August 7, 1995, the Debtors filed their voluntary Chapter 7 petition. They listed the $673 per month on Schedule I as income, and also listed the sum of $8,081 on Schedule C as an "estate trust" and claimed it as exempt under Section 5205 of New York's Civil Practice Law and Rules ("CPLR"). The Trustee then timely filed an objection to the claim of exemption, which the Debtors opposed.

#### The Prior Proceedings

The Trustee initially asserted that the payments represent an inheritance under 11 U.S.C. § 541(a)(5). The Trustee also asserted that (1) the Debtors had not produced documents establishing that the lottery proceeds constitute a trust, and (2) the trust documents, if they exist, do not contain the anti-alienation provisions required to exempt the alleged trust from a trustee's administration.

In response, the Debtors asserted that the annual distribution is "income," not property of the estate. In the alternative, the Debtors, relying on CPLR § 5205(c), claimed that the proceeds are exempt. The Debtors argued that because the bequest is not a lump sum, but is rather paid out annually when checks are received from the Massachusetts lottery, that this circumstance has "transformed" a simple inheritance into a trust within the meaning of CPLR § 5205.

Critical to the Court's decision is a determination as to whether the annual distribution is property of the Debtors' estate pursuant to 11 U.S.C. § 541.[2] If it is not property

---

**1.** The will dated October 19, 1989 left one half of her estate to her husband and the other half of her estate to her four children in equal shares. In the event that her husband predeceased her, then her entire estate would pass to her four children equally. Her daughter, Betty Anderson ("Anderson"), was named executrix.

**2.** Section 541(a)(1) states:

The commencement of a case under section ... 302 ... of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable

of the estate, the Debtors need not claim it as exempt, because the trustee could lay no claim to it. On the other hand, if it is property of the estate, then the Court must resolve the dispute regarding the claim of exemption.

In its January 18 Memorandum Decision, the Court noted that although a determination of what constitutes property of the estate is a question of federal law, the nature and extent of the debtor's interest in property is determined by applicable nonbankruptcy law. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Prudential Lines, Inc.*, 928 F.2d 565 (2d Cir.), *cert. denied*, 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991). The Court also noted that it must look to the law of the state in which the probate estate is located, *In re Chappel*, 189 B.R. 489 (9th Cir. BAP 1995); *see also In re Tesmetges*, 47 B.R. 385 (E.D.N.Y.1984); *In re Woodmere Investors Ltd. Partnership*, 178 B.R. 346 (Bankr. S.D.N.Y.1995), which, in this case, is the Commonwealth of Massachusetts. In their moving papers, however, neither party cited any authority from the statutes or courts of Massachusetts.

Moreover, the Court pointed out that under New York law and the decision in *In re Bentley*, 120 B.R. 712 (Bankr.S.D.N.Y.1990), it is possible that the Debtors' interest in the bequest may have arisen prior to the bankruptcy filing, on the date of Isabella McNeill's death. In this event, it would be property of the estate under Section 541(a)(1) of the Bankruptcy Code, and not Section 541(a)(5) as urged by the Trustee.

Accordingly, in its January 18 Memorandum Decision, the Court requested the parties to address the following:

1. Under the law of the Commonwealth of Massachusetts, at what point in time does the Debtor acquire a legal or equitable interest in the funds left him by Isabella McNeill?

2. Does the Debtor acquire a legal or equitable interest as the funds are received, or does the Debtor acquire an interest in the entire future stream of payments at one point in time?

The parties have complied with the Court's request, and the matter is now ripe for decision.

### DISCUSSION

### A. *Property of the Estate*

 It is well-established that a fundamental purpose of bankruptcy law is "to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors." *MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89, 91 (2d Cir.), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988) (*quoting In re Chanticleer Assoc., Ltd.*, 592 F.2d 70, 73–74 (2d Cir.1979)). To that end, 11 U.S.C. § 541 provides that the commencement of a bankruptcy case creates an estate, which "is comprised of all of the following property, wherever located and by whomever held: 1) ... all legal or equitable interests of the debtor in property as of the commencement of the case."

Predictably, the Trustee now asserts that under Massachusetts law, the Debtors acquired a vested and legally enforceable interest in the entire inheritance upon the admission of Isabella's McNeill's will to probate, which is effective as of the date of her death. Accordingly, he argues that

the interest of the Debtor as of the commencement of the bankruptcy case in any undistributed shares of the testamentary estate—including all of the future lottery installment payments—would constitute property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1).

The Debtors' argument is more difficult to discern. The Debtors appear to concede that Ronald McNeill acquired a legal interest in Isabella McNeill's estate upon admission of her will to probate, prior to their bankruptcy

---

interests of the debtor in property as of the commencement of the case.

\* \* \* \* \* \*

(5) any interest in property that would have been property of the estate if such interest had

been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, or inheritance.

filing. *See* Def's Mem. at 4 ("Although the legal interest of the Debtors vested in the estate as of the date of death of the Testator ..."). However, they also urge, citing *Brayton v. Stoughton,* 335 Mass. 321, 140 N.E.2d 161 (Mass.1957), that the debtor "acquires a legal interest in funds as they are distributed and received, and does not acquire his stake at one point." *See* Def's Mem. at 6. *Brayton,* however, is inapposite and provides no support for the distinction the Debtors apparently draw between their interest in Isabella McNeill's probate estate and their interest in the funds, which will be distributed in the future.

The facts in *Brayton* were as follows: the decedent died intestate, leaving as heirs a widow (who was appointed administratrix), siblings, nieces and nephews. On the date of his death, his estate had a value of approximately $10,000. Under the Massachusetts distributive statute, his widow was entitled to $5,000 and one half of the remainder, and the other heirs to the balance. If a distribution had been made on the date of her spouse's death, the widow would have received 73.2% of the estate; the heirs, 23.8%. The widow died several years later, however, without having filed an accounting and after the estate had grown in size. In the meantime, she had also used some $14,000 of the funds for living expenses. By the time the new administrator filed an accounting, the estate had a value of some $29,000. The issue before the Court was whether the respective shares of the widow and heirs should be determined as of the date of the husband's death, or as of the date of distribution. Construing the distributive statute, the court held that the shares must be determined as of the time of distribution. Accordingly, the court was concerned not with the date on which the respective shares vested, but rather on the date that their vested interests would be valued. In fact, the court quoted at length from an earlier case, which it viewed as dispositive:

It is said that the share of a distributee of personal estate vests at the death of the intestate; and that, so far as the widow is concerned, she takes as if her husband had died intestate. This is true to a certain extent. Her share in his estate is so far

vested that it will pass to her personal representative in case of death, and is assignable in her lifetime. It is a present interest in property. But it is not a right to receive any specific property or sum of money, until after a decree of distribution. When the estate is settled, so that a distribution can be made, it is the duty of the executors to pay according to the decree of the probate court.... In making the decree for distribution, the probate court must be governed by the statute....

As this passage makes clear, the *Brayton* court was construing the distributive statute in cases where a decedent dies without a will; it did not hold that a legatee's rights under a will only vest when the funds of an estate are actually distributed. To the contrary, the *Brayton* court recognized that the widow's interest "was so far vested" on the date of her husband's death that it would pass to her personal representative upon her death. Rather, the *Brayton* court merely recognized that the valuation of the widow's share of the estate would, according to statute, be done at the time of distribution.

Applying the *Brayton* rationale to the case at bar, Ronald McNeill's interest in his mother's estate vested upon her death and, upon his filing for Chapter 7 relief, passes to his bankruptcy trustee. Such a holding is consistent with the rule in Massachusetts that, "as soon as a will of real or personal property is admitted and approved, the probate relates back to the death of the testator, and affirms and fixes the title of the devise or bequest thereto from that date." *Union Trust Co. v. Nelen,* 283 Mass. 144, 149, 186 N.E. 66, 68 (Mass.1933). Similarly, the Court of Appeals for the First Circuit has held that under Massachusetts law, an undistributed bequest at the time of the commencement of the bankruptcy case is property of the Chapter 7 estate under Section 541(a)(1) so long as the will containing the bequest was admitted to probate prior to the bankruptcy filing. *In re Lonstein,* 950 F.2d 77 (1st Cir.1991); *see also In re Bentley,* 120 B.R. 712 (Bankr.S.D.N.Y.1990) (rejecting the view that an undistributed bequest would not become property of the estate until actual

distribution of the funds, and holding that as a matter of federal law, the undistributed bequest is property of the estate).

Accordingly, the Court concludes that Ronald McNeill possessed an interest in the entire lottery proceeds, without regard to when the funds are actually distributed, upon admission of Isabella McNeill's will to probate, which was prior to the commencement of his bankruptcy case. The funds are therefore property of his estate pursuant to 11 U.S.C. § 541(a)(1).

### B. *The Claim of Exemption*

■■■ The Trustee, as the party objecting to the Debtor's claims of exemption, bears the burden of proving by a preponderance of the evidence that the exemptions are improper. Fed.R.Bankr.P. 4003(c); *In re Modansky,* 159 B.R. 139, 141 (Bankr.S.D.N.Y.1993); *In re Corbi,* 149 B.R. 325, 329 (Bankr. E.D.N.Y.1993) (Duberstein, C.J.).

■■■ Under 11 U.S.C. § 522(b), a state may provide that its own laws, and not the Bankruptcy Code, govern a debtor's entitlement to exemptions, and New York State has done so. *See* N.Y.Debt. & Cred.L. ("DCL") § 284.[3] Therefore, debtors domiciled in New York are required to use state law exemptions. *In re Corbi, supra,* 149 B.R. at 329. The general rule is that the exemption statutes, including Section 5205(c), should be liberally construed in favor of the debtor. *In re Modansky,* 159 B.R. 139, 142 (Bankr. S.D.N.Y.1993); *see also In re Corbi, supra,* 149 B.R. at 329.

New York's DCL § 282 provides that an individual debtor may exempt from property of the bankruptcy estate only the personal property listed in CPLR § 5205; (2) the real property listed in CPLR § 5206; (3) the insurance policies, annuity contracts and the proceeds and avails thereof as provided by New York Insurance Law Section 3212; and (4) certain other property as set forth in § 282(1)–(3).

The Debtors rely principally on CPLR § 5205(c) which they quote as follows:

ALL trusts, custodial accounts ... are exempt; and all such, under the common law of the State of New York, shall be conclusively presumed to be spendthrift trusts.

■■ Significantly, the deleted language represented by the ellipses in the Debtors' quotation undermines their argument. CPLR § 5205(c)(3) does not provide that "ALL" trusts are conclusively presumed to be spendthrift trusts. Rather, it is only the trusts described in § 5205(c)(2), which refers to retirement plans. Section 5205(c) provides as follows:

1. Except as provided in paragraphs four and five of this subdivision, all property while held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor, is exempt from application to the satisfaction of a money judgment.

2. For purposes of this subdivision, all trusts, custodial accounts, annuities, insurance contracts, monies, assets or interests established as part of, and all payments from, the corpus of any trust qualifying as an individual retirement account under section four hundred eight of the United States Internal Revenue Code of 1986, as amended, or a Keogh (HR–10), retirement or other plan established by a corporation, which is qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, or created as a result of rollovers from such plans pursuant to sections 402(a)(5), 403(a)(4) or 408(d)(3) of the Internal Revenue Code of 1986, as amended, shall be considered a trust which has been created by or which has proceeded from a person other than the judgment debtor, even though such judgment debtor is (i) a self-employed individual, (ii) a partner of an entity sponsoring the Keogh.... plan, or (iii) a shareholder of the corpora-

---

3. Section 284 of New York's Debtor and Creditor Law, entitled "Exclusivity of exemptions," provides:

In accordance with the provisions of section five hundred twenty-two (b) of title eleven of

the United States Code, debtors domiciled in this state are not authorized to exempt from the estate property that is specified under subsection (d) of such section.

tion sponsoring the retirement or other plan.[4]

3. All trusts, custodial accounts, annuities, insurance contracts, monies, assets or interests described in paragraph two of this subdivision shall be conclusively presumed to be spendthrift trusts under this section and the common law of the state of New York for all purposes, including, but not limited to, all cases arising under or related to a case arising under.... the United States Bankruptcy Code, as amended.

CPLR §§ 5205(c)(2) and (3) refer only to trusts which are "established as part of, and all payments from, either the corpus of any trust qualifying as an individual retirement account ... or a Keogh ... retirement or other plan established by a corporation...." These provisions are therefore inapplicable to the Debtors' case.

■ The Debtors also argue, however, that CPLR § 5205(c)(1) applies, because "what was once a simple inheritance has been transformed, by facts and circumstances, into a trust" within the meaning of CPLR 5205(c)(1). The Debtors claim that the nature of the executrix' administration of the probate estate is that she "acts in a fiduciary capacity over time (past and future) as either a trustee or a custodian of the account of lottery funds (the "corpus"). The Debtors point out that Executrix Anderson oversees the receipt of the funds, the orderly deposit and clearance in the custodial estate account, and the annual distribution per

child. Because the lottery winnings are paid in installments, the Debtors argue that

> the executrix has been compelled to deal with the lottery installments in a trust-like form rather than a simple inheritance.... What was, at one point an inheritance, has transformed into a trust or a custodial account with Isabella McNeill as the Settlor, the Estate as Trustee and the four children as beneficiaries.

In addition, the Debtors urge that Isabella McNeill intended that "her estate become trustee [sic] for the custodial care, the accounting and issuance of her stipend to her four children as beneficiaries."

■ It is undisputed that the will, a one-page document, does not contain the word "trust."[5] But the Debtors argue, and the Court agrees, that a trust can nevertheless be created if the language of the will indicates such an intent. *Trustees of First Methodist Church v. Attorney General,* 359 Mass. 658, 270 N.E.2d 905, 906 (1971). The Court has reviewed Isabella McNeill's will, however, and cannot find any language from which an intent to create a trust may be inferred. Rather, the will speaks in terms of outright gifts, and imposes no duties upon the executrix other than those required by her status as executrix. *Compare Trustees of First Methodist Church, supra* (will which granted bequest to churches and requested that church committees "shall cause said funds to be carefully invested and the annual income of said investment shall be used ... in providing homes in private families, as far as possible for needy and elderly women"

---

**4.** Section 5205(c)(2) was amended effective Sept. 1, 1995. The new section substitutes the language "either any trust or plan, which is qualified" for the phrase "either the corpus of any trust qualifying." In addition, another clause was added that clarifies that where an individual is the settlor of an IRA, the IRA remains exempt. None of these changes are relevant to this case.

**5.** The will provided, in pertinent part:

BE IT REMEMBERED, that I, ISABELLA M. McNEILL of Quincy, in the County of Norfolk and the Commonwealth of Massachusetts, being of sound mind and memory, but knowing the uncertainty of this life, do hereby make this my Last Will and Testament, hereby revoking all former Wills by me at any time heretofore made.

FIRST: I give, devise and bequeath one-half (½) of my estate consisting of both real and personal property to my husband ...

SECOND: I give, devise and bequeath one-half (½) of my estate consisting of both real and personal property to my four (4) children ... in equal shares, share and share alike.

If my husband ... should predecease me, I give, devise and bequeath my entire estate to my four (4) children listed above, in equal shares, share and share alike ...

THIRD: I appoint my daughter, Betty Anderson ... as Executrix of this, my Will. If she fails or ceases to serve, I appoint my son, Ronald McNeill ... to serve as Executor in her place. I further request that no Executrix or Executor shall be required to provide surety on his or her official bond.

found to imply intent to create a trust; also required a provision for the discharge of the executor where the legacy is charged with a trust).

■ Nor is the Court persuaded by *First Nat'l Bank of Boston v. United States*, 76 F.2d 200 (1st Cir.1935), in which the court referred to an executor as holding personal property as a "quasi trustee for the benefit of the legatees or heirs." *Id.* at 201. First, the court was construing the term "held" in the context of the Revenue Act of 1928.[6] Second, the term "quasi" is used in legal phraseology "to indicate that one subject resembles another, with which it is compared, in certain characteristics, but that there are intrinsic and material differences between them." *Black's Law Dictionary* at 1245 (6th Ed.1990). It is a term "used to mark a resemblance, and supposes a difference between two objects." *Id.*

The Court agrees with the Trustee that there is no support in either statute or case law for the position that a trust is created by the "mere coincidence that part of the testamentary estate was comprised of a contractual right to payments which would mature and be payable to the estate in installments over a period of years." *See* Trustee's Mem. at 6. If the Court were to credit the Debtors' argument that the executor's actions in paying out the funds over a period of years transformed her into a trustee, then the same could be said in any case in which a bequest is undistributed or distributed over a period of years. Such a result would write § 541(a)(1) out of the Code with respect to testamentary bequests. Yet as § 541(a)(1) makes clear, the estate includes all property in which the debtor has an interest, "wherever located and by whomever held."

■ Finally, the Debtors argue that they should be entitled to exempt the funds under New York's cash exemption, relying upon *In re Bartoszewski*, 36 B.R. 424 (Bankr. N.D.N.Y.1984). That case held that a vested

future right to payment of a monetary inheritance in existence on the date of the petition constitutes "cash" and may be claimed as exempt. To the best that this Court can ascertain, the decision in *Bartoszewski* has not been followed in later cases. *See In re Abdo*, 65 B.R. 56 (Bankr.N.D.N.Y.1986) (vested right to future installments due on a mortgage are not "cash" and may not be claimed as exempt); *In re Sykes*, 76 B.R. 924 (Bankr.N.D.N.Y.1987) (check representing the entirety of a tax deferred savings account by a deceased spouse, received by the debtor within 180 days following the filing could not be exempted as cash).

In any event, the Court need not decide the issue, because the McNeills availed themselves of the homestead exemption of CPLR § 5206(a). The "cash" exemption is therefore not available to them. N.Y.DCL § 283(2); *In re de Kleinman*, 172 B.R. 764, 771 n. 6 (Bankr.S.D.N.Y.1994); *In re Flinn*, 95 B.R. 13, 15 (Bankr.N.D.N.Y.1988).

■ Although the Court is sympathetic to the Debtors' assertion that they will experience an "utmost extreme hardship" if the funds are not declared exempt, the Legislature of the State of New York has exercised its prerogative to determine what property is needed for a fresh start, and has enacted exemptions to protect that property. This Court cannot and should not substitute its judgment for that of the Legislature.

### CONCLUSIONS OF LAW

1. This is a core proceeding pursuant to 28 U.S.C. § 157(1) and (2)(A) and (B). *In re Kreiss*, 58 B.R. 999 (E.D.N.Y.1986). The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1334.

2. The right of the Debtor Ronald McNeill to receive the funds from the estate of Isabella McNeill vested in him prior to the commencement of this Chapter 7 case and is therefore property of the estate.

---

**6.** The issue before the *First Nat'l Bank* court was whether a taxpayer "held" securities for more than two years, such that proceeds from their sale should be taxed as a capital gain, rather than as ordinary income. The court concluded that the time during which the executor "held" the securities could be added to the calculation of the two-year period, because the executor "held" them only for the limited purpose of administering the estate, and not in his own right.

3. The Trustee's objection to the Debtors' claim of exemption is sustained.

The Trustee is directed to settle an order consistent with this Decision.