In re Philip C. WILCOX, a/k/a Philip Craig Wilcox, Debtor.

Bankruptcy No. 096–71952–511.

United States Bankruptcy Court, E.D. New York.

Oct. 29, 1996.

Fischoff, Gelberg & Director by Scott R. Schneider, Garden City, NY, for Debtor.

Fayer & Greenberger by Russell A. Fayer, Hempstead, NY, for Wendover Funding, Inc.

## MEMORANDUM DECISION AND ORDER

MELANIE L. CYGANOWSKI, Bankruptcy Judge.

### *(Motion to Lift Stay )*

By Notice of Motion, dated August 9, 1996, Wendover Funding Inc. ("Wendover") sought an order lifting the automatic stay pursuant to 11 U.S.C. § 362. The debtor, Philip Wilcox ("Debtor"), opposed the relief requested. Numerous papers were thereafter filed with the Court. A hearing was held on September 25, 1996, following which the Court reserved decision.

This constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr.P. 7052.

The facts relevant to the controversy are no longer disputed. Wendover holds a home equity note executed by the Debtor's father, Robert O. Wilcox ("Wilcox"). The note is secured by a first mortgage on real property previously owned by Wilcox and located at 173 Woodhull Avenue, Riverhead, New York (the "Property"). No payments have been made since May, 1995. On September 1, 1995,[1] Wilcox died and left the property to the Debtor and his brother, who each hold a 50% interest as joint tenants. Pursuant to the terms of the mortgage, the debt to Wendover was accelerated upon Wilcox's death, and thus become due and payable in full prior to the Debtor's bankruptcy filing. A deed reflecting the brothers' ownership was filed with the Clerk of Suffolk County on June 7, 1996, prior to the filing. *See* Exhibit A to Sur-reply Aff. of Scott R. Schneider, Esq., sworn to on Sept. 26, 1996.

The Debtor filed a voluntary petition seeking relief under Chapter 13 on June 26, 1996. He listed his interest in the Property as his residence on Schedule A, and listed Wendover as the holder of the mortgage on Schedule D. The Debtor's Chapter 13 plan provides that he will pay Wendover's claim, totalling some $76,000 in full over the life of the 5–year plan, at a rate of $1,797.00 per month

---

1. Wendover's moving papers assert that Wilcox died on September 1, 1995. However, the affidavit of Patricia S. Reed, Senior Vice President of Wendover, dated August 28, 1996 and an-nexed to Wendover's Reply Affirmation, alleges that Wilcox died on September 24, 1994. The exact date of death is not germane to the motion, however.

(which includes interest). Because the mortgage matured prior to the filing and because the plan contemplates full satisfaction of Wendover's claim, the Debtor is not making any mortgage payments "outside" the plan; the Debtor is, however, paying insurance and the property taxes as they become due.

*Can a Chapter 13 Debtor Repay a Note and Mortgage under a Plan Even Though No Privity of Contract Ever Existed with the Mortgagor?*

■ Wendover argues that the mortgage debt is not a "claim" within the meaning of § 1322(b)(2), (5) and (6) or § 101(5) and therefore the Debtor cannot force it to accept terms of repayment under a Chapter 13 plan. It contends that the Property is not property of the estate and points out that it has no right of recourse against the Debtor to demand repayment or equitable performance. Consequently, Wendover urges that the automatic stay should not apply to prevent it from foreclosing upon the Property.

Similar circumstances and arguments were presented in *In re Hutcherson*, 186 B.R. 546 (Bankr.N.D.Ga.1995). In that case, the property had been owned by the debtor's mother who had died, leaving a 1/4 interest to her son. The son then filed a Chapter 13 petition in which he intended to fully satisfy the claims of all creditors, including the mortgagee. The *Hutcherson* court rejected the bank's argument that it did not hold a "claim". Relying upon the Supreme Court's decision in *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991),[2] the *Hutcherson* court reasoned that it was compelled to apply an expansive interpretation of the term "claim" and, for that reason, distinguished cases decided prior to *Johnson* that had ruled to the contrary. In its conclusion, the *Hutcherson* court stated:

First National actually does hold a "claim" against the Debtor's estate in bankruptcy, even though no "privity of contract" ever existed between it and the Debtor. As such, the Debtor may modify First National's rights as part of his reorganization plan.

186 B.R. at 551.

Relying upon the reasoning in *Hutcherson*, this Court concludes that Wendover holds a "claim" against the Debtor's estate, even though no privity of contract ever existed between it and the Debtor. As a result, the Debtor may seek to repay as part of his Chapter 13 plan the debt owed to Wendover. Further, the Property is clearly property of the estate under 11 U.S.C. § 541(a) (property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"). The deed evidencing the Debtor's interest in the Property was recorded prior to the filing, and the Debtor obtained an interest in the Property when Wilcox died, leaving it to him. *In re McNeill*, 193 B.R. 654 (Bankr.E.D.N.Y.1996) (Debtor's interest in inherited property vested upon death of testator, for purposes of Section 541(a)(1)).

*Can a Chapter 13 Debtor Cure a Default of a Mortgage that has Fully Matured Prior to the Filing of the Petition?*

■ The mortgage at issue in this case is a so-called "reverse mortgage" which became due in full on the death of Wilcox, the mortgagor. Wendover argues that it would be an impermissible modification of the mortgage to permit the Debtor to repay a fully mature debt over a five-year period. *See* 11 U.S.C. § 1322(b)(2) (providing that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence ...").

By the Bankruptcy Reform Act of 1994, however, a new provision was added to 11

---

**2.** The *Johnson* case involved a so-called "chapter 20" debtor who was relieved of any personal liability under the mortgage by the discharge in his previously filed Chapter 7 case. After the close of the Chapter 7 case, the *Johnson* debtor filed a Chapter 13 petition and sought to cure the arrears owing under the mortgage. Akin to the issue at bar, the *Johnson* Court was faced with deciding whether the mortgagee could be said to hold a "claim" in the Chapter 13 case, even though it had no right of recovery against the debtor personally. The *Johnson* Court held in the affirmative, enabling the debtor to force the mortgagee to accept payment under the Chapter 13 plan of reorganization, notwithstanding the fact that the debtor had been relieved of all personal liability on the debt in question.

U.S.C. § 1322, namely, subsection (c) which provides:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law —

(1) a default with respect to ... a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

The reach of this provision was analyzed in *In re Escue,* 184 B.R. 287 (Bankr.M.D.Tenn. 1995), where Chief Judge George C. Paine, II, stated:

Subsection (c)(2) appears to contemplate mortgages which mature post-petition, but the Congressional intent of this statute when considered in light of the other provisions of Chapter 13, and the overall objections of bankruptcy, suggest that Congress also intended for debtors to be able to cure defaults on short-term mortgages which mature or balloon prior to the petition date.

*Id.* at 292. In denying the bank's motion for a modification of the automatic stay, Chief Judge Paine held:

Although no reported case appears to have decided this issue, this Court concludes, that based upon the legislative history, the stated objectives of Chapter 13, and Congress' preference for a Chapter 13 filing rather than an Chapter 7, that Congress intended to allow debtors to cure a mortgage indebtedness which mature or ballooned prepetition by providing for full payment of to the mortgagee over the life of the Chapter 13 Plan.

*Id.* at 293.

This Court agrees with the reasoning set forth in the *Escue* decision and, accordingly, concludes that the Debtor may cure the default by paying the Wendover claim in full over the life of his plan pursuant to 11 U.S.C. § 1325(a)(5).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(G).

2. Wendover holds a "claim" within the meaning of § 1322(b)(2), (5) and (6) against the Debtor's estate, even though no privity of contract ever existed between Wendover and the Debtor, and consequently, the Debtor may repay the claim owing Wendover as part of his Chapter 13 plan of reorganization.

3. Pursuant to 11 U.S.C. § 1322(c)(2), the Debtor may cure the default by paying the Wendover claim in full over the life of his plan in accordance with 11 U.S.C. § 1325(a)(5).

4. Wendover's motion seeking modification of the automatic stay is therefore denied.

SO ORDERED.