**In re Thomas W. PARKS, Jr., Debtor.**

**Bankruptcy No. 98–14477 K.**

United States Bankruptcy Court,
W.D. New York.

Nov. 12, 1998.

Judith Reardon, Robinowitz, Cohlan & Dubow, White Plains, NY, Marvin R. Baum, P.C., Ronald W. Zackem, Of Counsel, for The CIT Group/Consumer Finance, Inc.

Steven D. Wisniewski, Buffalo, NY, for Debtor.

MICHAEL J. KAPLAN, Chief Judge.

■ An interesting question, perhaps of first impression, is raised here. May a person who has inherited mortgaged real estate that is his home, file a Chapter 13 petition and Chapter 13 Plan to redeem the real estate over the objection of the mortgagee, even though the mortgagee obtained a judgment of foreclosure and sale before the real estate was deeded to that person by the executor of the decedent's estate and before the filing of the Chapter 13 petition? This Court answers the question in the negative and holds that Chapter 13 may not be used to force a mortgagee to accept installment payments of the redemption amount at least where, as here, the debtor and the mortgagee are not in privity of contract. It is only in the Chapter 13 case of the mortgagor that the contract rights between the mortgagor and the mortgagee may be modified. Those rights may not be modified in the Chapter 13

case of the mortgagor's successor-in-interest.[1]

## BACKGROUND

In 1995, Thomas Parks, Sr. passed away, having preserved a Last Will and Testament in which he left everything he owned, including his house, to his son and his daughter. The will did not make a specific bequest of the house, but rather empowered the executor, which was the son, to either sell the home or not, as he saw fit.

The son, Thomas Parks, Jr., lived in the home and wanted to keep it. But at the time of his father's death, his father's mortgage indebtedness was in default, his own finances were not sufficiently stable to work matters out with the existing mortgagee, and various efforts that he undertook to obtain financing from other sources (i.e. financing that would permit him to pay off the pre-existing mortgage as well as to pay his sister the value of her half interest in the real estate) had failed. In the meantime further defaults had occurred both in payments of monthly installments and payment of real property taxes.

Thomas Parks, Jr. continued his efforts to try to save the home after the pre-existing mortgagee commenced foreclosure proceedings in 1996. He was named, as executor, a party defendant, as was his sister. After the entry of a judgment of foreclosure and sale, a foreclosure sale was publicized. All other efforts having failed, Thomas Parks, Jr., as executor of his father's will, deeded the real estate to himself and his sister. Later that same day, he filed for Chapter 13 relief.

The Debtor now proposes a Chapter 13 plan by which he, with the financial assistance of others, proposes to pay off the total amount of mortgage indebtedness, including interest, foreclosure costs, collection costs,

---

1. The Court is aware of cases that permit the original mortgagor after foreclosure to redeem in installments by means of Chapter 13. See, e.g., *In re Downing*, 212 B.R. 459, 464 (Bankr.D.N.J. 1997); *In re Barham*, 193 B.R. 229, 232–33 (Bankr.E.D.N.C.1996). Because here, in New York, the right of redemption ends upon sale, and because prior to the sale the mortgagor is free under 11 U .S.C. § 1322(c)(1) to cure, de-accelerate, and reinstate the balance of the mort-

gage (without reference to redemption rights at all), it is not necessary for this Court to comment on such cases.

Also, though it is by no means clear, it is possible that if a note and mortgage are not in default, a grantee of the borrower/landlord might actually acquire some of the grantor's contract rights. That is addressed herein only to a limited extent. As noted in footnote 9, the balance of that question is left to a proper case.

attorneys fees, etc. within the life of a four or five year repayment plan.

Thus, the Debtor is not suggesting that he may reinstate the terms of his father's mortgage on the property just as his father could do (under 11 U.S.C. § 1322(c)(5)) if he were the Chapter 13 Debtor here. Rather, his proposal is to pay off this encumbrance upon the property which he and his sister now own, which is an *in rem* liability only (since he was not an obligor on his father's mortgage), in full over the life of the plan.

Assuming for the sake of argument that he and his sister have validly acquired their father's right of redemption under New York mortgage law,[2] he simply wishes to exercise that right of redemption by payment, over the life of the plan, of the present value of the full amount of the mortgagee's claim. Of course, the Debtor also proposes the continuation of the mortgagee's lien, the maintenance of insurance, and other normal elements of "adequate protection" of the mortgage lien.

The mortgagee challenges the feasibility of the plan. And it seeks lift of the automatic stay under 11 U.S.C. § 362(d) arguing that the Debtor did not acquire any valid legal interest when he, as executor, deeded the property to himself and his sister long after (1) the commencement of the foreclosure proceeding, (2) the filing of a *lis pendens,* and (3) the entry of a judgment of foreclosure and sale. Rather, the mortgagee asserts, any legal interest of the Debtor in the property is a "self-created sham designed to delay" the mortgagee and is designed to "provide the Debtor with continued cost-free living without the Debtor ever having personal liability on the Mortgage and Note." The mortgagee further argues that pursuant to the terms of the mortgage, the property could not be transferred without the consent of the mortgagee, and such consent had never been sought or given. Additionally, the mortgagee argues that pursuant to the express terms of the Mortgage and Note, the Debtor could not stay the foreclosure by a

"bogus transfer of the subject property which transfer in and of itself is yet another default under the terms of the Mortgage and Note," and that the Debtor cannot, by transferring the subject property to himself, "become the mortgagor."

The mortgagee further asserts that the Debtor "expects this Court to ignore the fact that Debtor is not an obligor on the instant Mortgage and Note and [to] require [the mortgagee] to create a mortgagee-mortgagor relationship with the Debtor who is unemployed and has no visible means of support." Finally, it argues that there is no equity in the property and that "cause" exists for the lift of stay, in light of many allegations of fact made by the mortgagee in its motion and supporting papers.

### DISCUSSION

■ First, it should be observed that by virtue of 11 U.S.C. § 102(2), there can be no doubt about the fact that the absence of an obligor-obligee relationship here is not dispositive: A claim only against property of a debtor is nonetheless a "creditor" claim under the Code. Now, as noted above, the Court will assume, without deciding, that as heirs and now purportedly as record owners of the property, the Debtor and his sister would have a right under the laws of the State of New York to exercise an equity of redemption of the property prior to the foreclosure sale, just as their father could have done.

The Debtor makes no argument that under state law, an equity of redemption may be exercised by a payment over a period of years regardless of the non-acquiescence of the mortgagee. Consequently, his plan could be premised only on some provision of the Bankruptcy Code. The only portion of the Code that could possibly serve as the predicate for this Debtor's proposal is 11 U.S.C. § 1322(b), (c), or (e), which provide what a Chapter 13 plan "may" do. Because this Chapter 13 petition was filed after the entry of judgment of foreclosure and sale, but be-

2. This is an uncertain proposition. The Debtor and his sister were named as defendants in the foreclosure proceeding (he only as "Executor" however), and it is possible that the right for

them to redeem their interests did not survive the judgment of foreclosure. This Court need not decide the issue.

fore the actual foreclosure sale, one's attention is immediately called to § 1322(c) which replaced the prior subsection in 1994. The amended provision states, in pertinent part, that "a default with respect to, or that gave rise to, a lien on the Debtor's principal residence may be cured ... until such residence is sold at a foreclosure sale that is conducted in accordance with applicable non-bankruptcy law." 11 U.S.C. § 1322(c)(1) (Supp.1998). Even before the enactment of that provision, it was established under N.Y. state law that a homeowner's rights to the land are not completely extinguished by the entry of a judgment of foreclosure and sale, but rather sufficient rights exist up to the point of foreclosure sale to permit complete relief under Chapter 13. See *DiPierro v. Taddeo (In re Taddeo)*, 685 F.2d 24, 28–29 (2d Cir.1982). Therefore, assuming arguendo that the Debtor stands in his father's shoes, the fact that a judgment of foreclosure and sale was entered before the filing of this Chapter 13 petition does not, of itself, end the inquiry into this Debtor's rights.

Next we will examine § 1322(b)(3) and (5). Section 1322(b)(3) permits a plan to "provide for the curing or waiving of any default," and (b)(5) contains an exception to the prohibition against modification of mortgages on principal residences, stating that the plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." Subsection (b)(3) thus provides for the curing or waiving of any default, and subsection (5) permits, in essence, the de-acceleration of any long-term obligation, and the reinstatement of the original terms of the mortgage, so long as defaults are seasonably cured, and ongoing payments are to be maintained after de-acceleration.

Normally these provisions are invoked by the original mortgagors. Those mortgagors seek to cure all prepetition mortgage defaults in a reasonable period of time under their Chapter 13 plans (three to five years in this Court), de-accelerate mortgage obligations, reinstate original mortgage terms, and re-sume and continue to pay the ordinary mortgage payments throughout the life of their plans and thereafter. Thousands of debtors each year enjoy precisely that relief in Chapter 13 cases across the nation today.

Although the Debtor here does not so request, it is informative to ask whether this Debtor may seek to cure or to compel the mortgagee to waive defaults under a contract to which he was not a party and which can never be performed by the original obligor, because the original obligor has died.

Obviously, the terms are too grossly overbroad to have a plain meaning. "Any default" cannot mean "any default," or else a benevolent (or paid-off) debtor could cure her neighbor's mortgage defaults. The term must be constrained to refer to something connected with the debtor or the debtor's property. But what kind or degree of relationship is sufficient to be within the scope of a debtor's privilege of "cure?" Does it suffice that this Debtor now has "title" to the property?

To this writer, the answer lies in the implications of the word "cure." Dictionary definitions refer to "restore," "remedy," "recover" and similar terms of revival. To revive an agreement under which the debtor has no rights, or to revive a legal status that only someone other than the debtor may assert, is nonsensical.

A common-sense interpretation requires that only a right or status lost by the debtor may be "cured"; and once cured, there must be no new *ipso facto* default. In other words, this Debtor may not "cure" someone else's defaults under a contract to which he was neither a party nor a third-party beneficiary, nor may he "cure" or "waive" defaults that would not restore this Debtor (rather than his father) to an enforceable status under contract or law. And, even if we assume that this Debtor has somehow inherited contract rights under the Note and Mortgage, and that the Debtor, consequently, could "revive" rights of his own thereunder if he could "cure" the defaults in payment of the mortgage installments and property taxes, he would nonetheless be in immediate default again because of *ipso facto* clauses in the note dealing with

the father's property being subject to trusteeship, guardianship, or the like (11 U.S.C. § 541(c)(1)(B) would protect his father from the operation of certain *ipso facto* clauses in the event of his father's petition under the Bankruptcy Code, but it does not protect the son.) As to "cure," then, it either (1) would make no sense to construe the statute so as to permit a "cure" of defaults under his father's contract, or (2) such a "cure" could be construed to be permissible under the statute, but useless.

Apart from the contract, it is possible that this Debtor has a statutory right of redemption of the real estate. Perhaps he may "cure" the failure to tender the redemption price in a timely fashion, by proposing a prompt "cure" now of such right. In any event, that is not proposed.[3]

The Code provisions dealing with "cure" are thus of no help to the Debtor. Only the Chapter 13 provisions that deal with "modification" might have relevance here where the Debtor seeks to redeem in installments over a four or five year period.

11 U.S.C. § 1322(b)(2) broadly permits the Debtor to "modify" the rights of holders of secured claims. If this were not the Debtor's principal residence,[4] could he so "modify" the rights of the mortgagee as to use Chapter 13 to stretch out the redemption?

■ For analytic purposes, it is useful to consider a judgment lien,[5] rather than a mortgage lien. No one has questioned in any case before this writer the privilege of a Chapter 13 debtor's paying a judgment lien in full over the life of the plan, where the debtor is the judgment debtor. On the other hand, it has not been suggested in any case before this writer that a judgment lien that attached before the Chapter 13 debtor acquired the property could be so stretched out without the consent of the judgment creditor.

We intuit a qualitative difference between an encumbrance that one has assumed by taking title subject thereto, and an encumbrance that one who already took title has thereafter suffered. For example, there is an intuitive limitation on the § 522(f)(1) avoidance of the "fixing" of a judgment lien—that provision cannot be read as avoiding a "fixing" that occurred before the Debtor acquired title and thereby assumed that lien.

There are many policy reasons why one should not be permitted to acquire property (by inheritance or otherwise) that is already subject to a lien, and then use the § 1322(b)(2) power to "modify" against the lienor who never dealt with that debtor. But sound policy does not always dictate the interpretation of a statute.

And this Plan is not on its face an abusive effort which sound policy might forbid. Rather, by federal statute, the "due-on-sale" clause in the mortgage at bar is not enforceable against this Debtor's acquisition of his deceased father's home. See 12 U.S.C. § 1701 j–3(d)(5) and (6) (1989). Some legislative policy is, therefore, on the Debtor's side. Moreover, this is the Debtor's home—he is not some shill or opportunist. And the Debtor does not seek to succeed to his father's mortgage terms, but only to stretch out a full redemption over the life of a Chapter 13 Plan. And finally, the mortgagee here has no reason to want to acquire the property at foreclosure.

In sum, then, (but assuming feasibility[6]), this Debtor does not seek to deprive the mortgagee of anything other than immediate right of foreclosure. The mortgagee will be paid in full at a "present value" rate equal to

---

**3.** A cure of mortgage arrears over the life of a three to five-year plan is "prompt" cure here. But a cure of the failure to pay the redemption price in a timely fashion is nothing like cure of mortgage arrears. A month or two, perhaps. But this Court is not a super-legislature, extending statutory redemption rights out over a period of years, at favorable rates.

**4.** It is his principal residence, but the Court will not rest this decision on that fact alone. (As noted above, "modification" under § 1322(b)(2) is expressly prohibited in this circumstance. See

*Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).)

**5.** A judgment of foreclosure is understood to be excluded from the definition of judgment lien. An express provision to that effect for certain purposes is found at 11 U.S.C. § 522(f)(2)(C).

**6.** The mortgagee vigorously disputes feasibility but the Court has not yet heard evidence in this regard.

the rate of interest on a money judgment in this state. The "good faith" of the Debtor is challenged by the mortgagee here, but it seems to this writer that it is more a matter of law, rather than of equity or discretion, that is presented.

The question is that of the qualitative difference, if any, between a pre-existing lien on realty acquired by the debtor, and liens granted or suffered by the debtor while in title, for purposes of § 1322(b)(2).[7] This Court finds that the reach of § 1322(b)(2) cannot extend to include modification of a secured claim already in place when the debtor equitably or legally acquired the property.

Such a constraint on the use of § 1322 may work some hardship, but just as a principle of law sometimes condones less-favored advantages for the sake of preserving worthy ones,[8] otherwise worthy objectives are sometimes precluded in order to leave no latitude (in ambiguous or uncertain distinctions) for abuse. This seems to be an instance of the latter in that this may be an honest Debtor simply trying to save his home, but who may not do so because any statutory interpretation which would permit him to do so must also permit, for example, a tenant to take title in the eleventh-hour and thwart foreclosure of the landlord's mortgage, even if the tenant is secretly a shill for the landlord.

And here it makes no difference whether the Debtor is viewed as "owner" when he deeded the property to himself, or when his father died. Nor does it matter whether the defaults occurred before or after. The mortgage granted by the father in this case was a burden on the land whenever the son acquired it, and any default in the Note and Mortgage is not curable in the son's Chapter 13. Nor may the son here modify this creditor's right to foreclose in the event of a default. The mortgagee's right to foreclose in such event was a right freely accepted by the son when he took ownership subject to that right.

## CONCLUSION

The Bankruptcy Code is technical and broad, obscure and arcane, but it rests on only a few basic pillars. One of those is that a debtor brings into a Code case nothing more than the debtor had. Of course, it is in the nature of law that there are a few buttresses to that pillar, dealing with rights that were fraudulently or improperly or preferentially transferred prior to filing, for example. The pillar is nonetheless sound. The "cures" or "modifications" contemplated in 11 U.S.C. § 1322 may not extend beyond what the Debtor accepted by acquisition, nor to "revive" rights that only his predecessor-in-interest, his father, possessed.

Because the son may have acquired statutory rights, rather than contract rights, Chapter 13 might possibly be a mechanism for a prompt "cure" of the son's "waiver" of the equity of the redemption by immediate or nearly immediate payment of the redemption amount.

The mortgagee's motion to lift stay under 11 U.S.C. § 362(d) to proceed to foreclosure sale is granted. This is without prejudice, however, to the right of the Debtor to argue, if necessary and appropriate, that the mortgagee must accept a prompt tender of the redemption amount, in good funds, if such tender is made before the next date set for foreclosure sale.[9]

SO ORDERED.

---

7. Again, we pretend that this is not governed by the fact that that statute prohibits modification of the rights of a mortgagee secured only by a debtor's principal residence.

8. For example, burden of proof rules sometimes result in injustice in order to protect the wrongly accused.

9. The Court leaves to another day the question of whether a similarly-situated debtor whose parent's contract would not be in *ipso facto* default after a "cure" of payment defaults, could use Chapter 13 to effect the "cure." In this and broader regards, see 78 N.Y. Jur., Mortgages §§ 285 et seq. (1989) suggests that grantees of one not in default might actually have a right to

quiet enjoyment in the absence of later default and in the absence of a "due-on-transfer" clause that is actually enforceable, unlike the "due-on-transfer" clause here.