In re Cranford E. THREATS, Sr.,
and Joyce Threats, Debtor.

No. 93 B 7694.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Oct. 5, 1993.

Rodney Hughes Brooks, Chicago, IL, for debtors.

Frank Marco, Richard Aronow, Barbara Boiko, Shapiro & Kreisman, Northbrook, IL, for Fleet Real Estate.

Jack McCullough, Chapter 13 Trustee, Chicago, IL.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

Fleet Real Estate Funding Corporation ("Fleet") objects to the confirmation of the Debtors' proposed Chapter 13 plan and, in addition, seeks a modification of the automatic stay so that it may proceed to foreclosure against the Debtors' primary residence. The question before the Court is whether the transferees of property that is their primary residence may defeat assumption and due-on-sale clauses by curing defaults under the mortgage through a Chapter 13 plan. Fleet argues that the proposed plan modifies its rights as a home lender, violating Section 1322(b)(2) of the Bankruptcy Code, and that it is entitled to modification of the stay under Section

362(d)(1) to allow it to foreclose its mortgage. *See* 11 U.S.C. § 1322(b)(2); 11 U.S.C. § 362(d)(1). For the reasons set forth below, the Court agrees.

Briefs and evidence have been submitted and a hearing was held on August 5, 1993, wherein the Court heard the testimony of Joyce Threats and the arguments of the attorneys. After considering all the evidence and arguments before it, the Court hereby grants Fleet's motion to modify the automatic stay and denies confirmation of the Debtors' Chapter 13 plan.

This is a core proceeding over which the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G) and (L).

The testimony established and the Court finds that Fleet holds the first mortgage on the Debtors' residence by virtue of a note guaranteed by the Veterans Administration and secured by a mortgage agreement, dated May 30, 1990, with Dwight Wasp and Betty Moore–Wasp (the "Mortgagors"). The Mortgagors transferred title to the Debtors via quitclaim deed, recorded October 23, 1992, notwithstanding a due-on-sale clause in the VA Assumption Policy Rider and the following language printed in large bold print atop the mortgage, mortgage note and VA Assumption Policy Rider:

**NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.**

The Debtors have not assumed the mortgage, complied with any of the assumption requirements nor applied to the Department of Veterans Affairs for an assumption application. Prior to the filing of the Debtors' Chapter 13 petition on April 8, 1993, the note fell over $16,000 into arrears and, pursuant to an acceleration clause, became immediately due and payable.

The Debtors contend, citing Section 1322(b), that while they themselves are not personally liable on the mortgage note they can cure defaults under the mortgage because Fleet's lien is a "claim" against the Debtors' estate that can be dealt with in a Chapter 13 plan. The specific provisions that the Debtors rely on provide:[1]

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. §§ 1322(b)(2), (3) and (5).

The Court agrees that Fleet's mortgage alone entitles it to a claim against the estate. "Claim" is defined broadly under Section 101(5) to encompass any "right to payment ..." or "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment ..." *Nobelman v. American Savings Bank,* — U.S. —, 113 S.Ct. 2106, 2111, 124 L.Ed.2d 228 (1993); 11 U.S.C. § 101(5). Notwithstanding that Fleet has no right to any payment from the Debtors personally, its ability to foreclose on the property in the event the note is not paid gives it a "right to payment" against property of the estate. "[T]he mortgage holder still retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property." *Johnson v. Home State Bank,* — U.S. —, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) (mortgage surviving Chapter 7 discharge of debtor's personal liability was "claim" that could be included in Chapter 13 plan).

---

**1.** The courts in *Matter of Clark,* 738 F.2d 869 (7th Cir.1984), *Grubbs v. Houston First American Sav. Ass'n,* 730 F.2d 236 (5th Cir.1984) (en banc)

and *In re Taddeo,* 685 F.2d 24 (2nd Cir.1982) analyze these provisions in the context of their legislative history.

*See also In re Ligon,* 97 B.R. 398 (Bankr. N.D.Ill.1989) (same). Recognizing that Fleet, a home lender, is the holder of a secured claim, and that such a holder's rights may be modified to a limited extent under Sections 1322(b)(3) and (5), the Court nonetheless holds that they may not be modified to the extent proposed in the Debtors' plan.

■ Defeating the due-on-sale and assumption clauses would impermissibly modify Fleet's rights. A debtor may not modify a home mortgagee's rights except to the extent provided in Sections 1322(b)(3) and (5), allowing for curing of defaults and maintenance of payments. *See* 11 U.S.C. §§ 1322(b)(3) and (5). The term "rights" is not defined anywhere in the Bankruptcy Code. However, ownership and security interests, including a mortgagee's interest, are determined under state law. *Butner v. U.S.,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–918, 59 L.Ed.2d 136 (1979). Therefore, Fleet's rights that are protected under § 1322(b)(2) are those that were "bargained for by the mortgagor and the mortgagee," *Dewsnup v. Timm,* —— U.S. ——, ——, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992), and "reflected in the relevant mortgage instruments, which are enforceable under [state] law," *Nobelman,* —— U.S. at ——, 113 S.Ct. at 2110. The Debtors do not maintain that they have complied with the terms of the mortgage pertaining to its assumption; nor that they intend, or are even able to comply. Yet their proposed plan would be a *de facto* assumption, enabling them to substitute their performance for the Mortgagors' by providing for the de-acceleration of the loan, curing of arrearages and maintenance of current payments. Additionally, allowing the Debtors to de-accelerate the loan would eviscerate the due-on-sale clause without the benefit of restoring rights that the Debtors previously held under any agreement. In the absence of a showing that both the assumption and due-on-sale clauses would be unenforceable in Illinois, the Court finds that the proposed plan would impermissibly modify Fleet's rights in violation of Section 1322(b)(2).

The Debtors premise their argument in favor of confirmation on the right of debtors to cure defaults and maintain current payments through a Chapter 13 plan. However, they miss the purpose behind these subsections—allowing the parties to return to their respective pre-default positions under the relevant agreement. "[C]ure means to restore matters to the way they were before the default." *Clark,* 738 F.2d at 872; *accord Matter of Roach,* 824 F.2d 1370, 1375 (3rd Cir.1987) ("[A] post-acceleration cure differs from other kinds of modification to a home mortgagee's rights in that it does no more than return the debtor to full compliance with the mortgage and restore the original mortgagee-mortgagor relationship.") Fleet's rights in the property arise and are defined in the mortgage instruments, yet there is no mortgagee-mortgagor relationship to restore. There can therefore be no cure.

Had the Debtors been the original mortgagors, their position would likely have been viable. There is ample case support for de-acceleration of a note secured by a residential property mortgage, paying off arrearages and maintaining payments through a plan. *See Clark,* 738 F.2d at 872 ("the power to cure necessarily includes the power to de-accelerate the payments on the note"); *Grubbs,* 730 F.2d at 242; *Taddeo,* 685 F.2d at 26 ("Congress intended to allow mortgagors to 'de-accelerate' their mortgage and reinstate its original payment schedule.") However, part of the consideration Fleet bargained for was the right to payment in full upon sale of the property and the right to have the Department of Veterans Affairs approve any proposed assumption of the mortgage. These rights may not be modified in a Chapter 13 plan. The Bankruptcy Code allows debtors to regain certain previously held interests in property—it does not allow them to create new ones.

The Court's decision is in accord with the only case cited that has looked directly at this question. In *In re Green,* 42 B.R. 308 (Bankr:D.N.H.1984), debtors who had purchased residential property from the original mortgagors without adhering to a due-

on-sale clause were not permitted to cure defaults through a Chapter 13 plan. The mortgagee was granted relief from the automatic stay to permit foreclosure. Fleet is entitled to the same relief.

Because the Debtors are not entitled to the relief they seek in their proposed plan, and the Mortgagors have abandoned their interest in the property, the Court finds that Fleet's interest is not adequately protected. Just cause exists therefore to modify the stay to allow it to proceed to foreclosure.

## CONCLUSION

For the reasons set forth herein, Fleet's motion to modify the automatic stay is hereby granted and confirmation of the Debtors' proposed Chapter 13 plan is hereby denied. This cause is set for further status on October 21, 1993 at 10:00 a.m.