**In the Matter of Joe T. HUTCHERSON, Debtor.**

**Bankruptcy No. N95–10708–WHD.**

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Sept. 22, 1995.

Griffin E. Howell, III, Griffin, GA, for First Nat. Bank of Griffin.

Daniel L. Gibbs, Rogers & Cates, P.C., Atlanta, GA, for debtor.

### *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Currently before the Court in these proceedings is an Objection to Confirmation, filed by the First National Bank of Griffin (hereinafter "First National" or "the Bank") in the Chapter 13 bankruptcy reorganization of Joe T. Hutcherson (hereinafter "the Debtor"). This matter constitutes a core proceeding, *see* 28 U.S.C. § 157(b)(2)(L), and the Court will dispose of it in accordance with the following reasoning.

#### DISCUSSION

All disputes in this matter turn on issues of law, and the parties therefore have stipulated to the factual background involved. Prior to the Debtor's Chapter 13 filing, First National held the promissory note and mortgage upon a residence owned by the Debtor's mother. Pursuant to a default clause within its note, First National had accelerated the

underlying debt and begun non-judicial fore-closure proceedings against the property. During this same pre-petition period, however, the Debtor's mother died, and in accordance with her testamentary plan, a 1/4 interest in the aforementioned property passed to the Debtor. The Debtor filed a petition under Chapter 13 of the Bankruptcy Code shortly thereafter. At the time of the Debtor's filing, approximately $9,146.00 remained outstanding on the mortgage obligation, while the property itself held a market value of roughly $16,000.00.[1]

As proposed, the Debtor's plan of reorganization seeks to fully satisfy the claims of all creditors, including First National, through $1,250.00 monthly payments to the Chapter 13 Trustee.[2] According to the Debtor's itemized schedules, this monthly remittance represents all cash held by the Debtor, after deducting $1,139.00 in basic living expenses from his $2,389.00 monthly income.[3]

The Bank has objected to confirmation of the Debtor's plan, and in support of that objection, argues: (1) that it should not be forced to accept payment under the Debtor's plan because it does not have a "claim" against his estate; (2) that the plan does not devote all of the Debtor's disposable income to debt repayment; and (3) that the Debtor proposed this plan in bad faith. The Court will consider each of First National's presented arguments in turn.

## I. The Impact of *Johnson v. Home State Bank* Upon First National's Status as a "Claimholder".

As a general rule, the Bankruptcy Code allows a Chapter 13 debtor to propose a reorganization plan which modifies the rights of those parties who hold "claims" against his estate. *See* 11 U.S.C. § 1322(b)(2), (5) & (6). Thus, "claimholder" status presumptively forms a condition precedent to a creditor's mandatory participation in the Debtor's plan. On the question of exactly what qualifies as a "claim" in bankruptcy, the Code provides that such an interest includes:

\* \* \* \* \* \*

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not

---

1. Several judgment liens had attached to the property in addition to First National's security interest. Those liens further encumbered the property by a total figure of $5,564.76.

2. The Court observes that, during the pendency of this objection, the Debtor has suggested certain revisions to this original plan and schedules. Given, however, that the Court has assigned a separate hearing to evaluate those modifications at a future date, the present Order will focus upon the terms of the plan as originally proposed and First National's objections thereto.

3. The Debtor's schedule reflects the following monthly expenses:

| | | |
|---|---|---|
| Rent or home mortgage payment | $ | 0.00 |
| Utilities: Electricity and heating fuel | $ | 210.00 |
| Water and sewer | $ | 20.00 |
| Telephone | $ | 150.00 |
| Home maintenance | $ | 101.00 |
| Food | $ | 200.00 |
| Clothing | $ | 20.00 |
| Laundry and Dry cleaning | $ | 15.00 |
| Medical and Dental expenses | $ | 10.00 |
| Transportation | $ | 100.00 |
| Insurance: Homeowner's or renter's | $ | 15.00 |
| Health | $ | 50.00 |
| Auto | $ | 130.00 |
| Taxes: Property Tax | $ | 18.00 |
| Alimony, maintenance, and support paid to others | $ | 100.00 |
| TOTAL MONTHLY EXPENSES | | $1,139.00 |

such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured

\* \* \* \* \* \*

11 U.S.C. § 101(5). Seizing upon the language of section 101(5), First National points out that it does not have a right to payment or equitable performance from the Debtor individually. Rather, it merely has a claim against property in which the Debtor has taken an interest by devise. As such, reasons the Bank, it does not have a "claim" in this bankruptcy case, and the Debtor cannot force it to accept those terms of payment provided by the plan of reorganization.

Conversely, the Debtor argues that the Supreme Court's holding in *Johnson v. Home State Bank (In re Johnson)*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), should lead the Court to a conclusion that First National does indeed hold a "claim" in this bankruptcy case. Based on somewhat different facts, *Johnson* involved a "Chapter 20" debtor's attempt to cure arrearages to his mortgage holder as part of the debtor's plan of reorganization.[4] As is the case here, however, resolution of the *Johnson* controversy turned on whether the mortgagee could be said to hold a "claim" in the debtor's Chapter 13 case, even though it held no right of recovery against the debtor personally. *Id.* at 83, 111 S.Ct. at 2153-54. The *Johnson* Court answered the question in the affirmative, reasoning that the text of section 101(5),

as well as other sections in the Code, suggested that the naked mortgage surviving a Chapter 7 case would constitute a "claim" in subsequent bankruptcies by the debtor.[5] As a consequence, the Supreme Court held that the debtor could force his mortgagee to accept payment under a subsequent Chapter 13 plan of reorganization, notwithstanding the fact that his initial Chapter 7 bankruptcy had discharged him of all personal liability on the debt in question.

In response to this authority, First National has raised two related arguments by which it attempts to dissuade the Court from applying *Johnson*'s reasoning to this controversy. First, the Bank submits that *Johnson* should be limited to its unique facts and should therefore only govern the resolution of cases involving mortgagors who follow a Chapter 7 bankruptcy with one under Chapter 13. The Court finds, however, that the very text of the *Johnson* holding argues against such a constrictive reading. As a foundation for its disposition of that case, the Supreme Court reasoned:

> Insofar as the mortgage interest that passes through a Chapter 7 liquidation is enforceable only against the debtor's property, this interest has the same properties as a nonrecourse loan. It is true, as the Court of Appeals noted, that the debtor and creditor in such a case did not conceive of their credit agreement as a nonrecourse loan when they entered it. However, insofar as Congress did not expressly limit

---

4. Mr. Johnson's first bankruptcy, a Chapter 7 liquidation, resulted in his receiving a discharge from all personal liability on his mortgage debt. As is customarily the case, however, the creditor's underlying mortgage survived that liquidation case. Thus, at the time of the debtor's subsequent Chapter 13 filing, the mortgagee held a claim against the debtor's property, but enjoyed no right of payment or equitable performance from the debtor himself. Consequently, the key issue in *Johnson* became whether the mortgagee could be said to hold a "claim" in the second bankruptcy case, notwithstanding the atypical nature of its interest. *Id.* at 79–81, 111 S.Ct. at 2151–53.

5. Writing for a unanimous Court, Justice Marshall began by pointing out that, "even after the debtor's personal obligations have been extinguished, the mortgage holder still retains 'right to payment'" from the proceeds of any sale, as

well as a "right to an equitable remedy" of foreclosure. *Id.* at 84, 111 S.Ct. at 2154. Thus, reasoned the Court, mortgage holder creditor holds a "claim" as defined by section 101(5). *Id.*

As further support for his conclusion, Justice Marshall also pointed out that section 101(2) "establishes, as a '[r]ul[e] of construction,' that the phrase 'claim against the debtor includes a claim against the property of the debtor.'" *See id.* at 85, 111 S.Ct. at 2155 (internal quotations omitted); *see also* 11 U.S.C. § 102(2). Seeing no reason why section 102(2)'s provision for intentionally non-recourse loans should not apply with equal force to a conventional mortgage which ultimately became stripped of its personal liability component by Chapter 7, Justice Marshall concluded that the *Johnson* creditor's interest did in fact constitute a "claim." *Id.* at 84–87, 111 S.Ct. at 2154–56.

§ 102(2) to nonrecourse loans but rather chose general language broad enough to encompass such obligations, we understand Congress' intent to be that § 102(2) extend[s] to all interests having the relevant attributes of nonrecourse obligations *regardless of how these interests come into existence.*

*Johnson,* 501 U.S. at 86–87, 111 S.Ct. at 2155–56 (emphasis added). Thus, in the course of its *Johnson* holding, the Supreme Court flatly eschewed the sort of factual distinctions upon which the Bank now urges the Court to embark.[6] As a consequence, the Court finds itself bound to apply the *Johnson* reasoning to the case before it, notwithstanding the fact that the two cases did not arrive at their common controversy through the same chain of events.

Just as it has argued the factual dissimilarity of *Johnson,* First National also has drawn the Court's attention to a series of pre-*Johnson* case law which it submits is more directly on point to the instant controversy than is the Supreme Court's resolution of the "Chapter 20" dilemma. As a group, these cases stand for the proposition that a creditor cannot be forced into plan participation where it comes into bankruptcy holding a claim against the debtor's property rather than against the debtor personally. *See Jim Walter Homes, Inc. v. Kelly (In re Kelly),* 67 B.R. 508, 513–14 (Bankr.S.D.Miss.1986) (as transferee of previously-mortgaged property, debtor could not cure default pursuant to plan because mortgagor held no "claim" against him); *In re Jones,* 98 B.R. 757, 758 (Bankr.N.D.Ohio 1989) (because debtor was not personally liable for mortgage, mortgagee did not qualify as holder of a "claim"). In particular, First National underscores the relevance of *In re Wilkinson,* 99 B.R. 366 (Bankr.N.D.Ohio 1989), wherein the court found that a debtor, taking property by devise from a relative, could not cure arrearages on the corresponding mortgage because he did not have any personal liability for the decedent's obligation. According to the

Bank, *Wilkinson,* rather than the *Johnson* holding, should provide the Court with a benchmark by which to resolve this matter.

The Court acknowledges the factual similarity of *Kelly, Jones* and, in particular, *Wilkinson.* It also points out, however, that each of those courts handed down its decision without the benefit of the Supreme Court's *Johnson* holding. To the extent that those cases contradict the reasoning of *Johnson,* the Court therefore must conclude that they no longer present an accurate interpretation of section 101(5)'s reference to "claim." Thus, although factually analogous, these cases will not sway the Court from its ultimate conclusion that First National does indeed hold a "claim" against the Debtor's estate.

## II. "Bad Faith" and the Debtor's Commitment of All Disposable Income.

 In addition to its denial of "claim-holder" status, First National grounds its argument against confirmation on a contention that the Debtor has proposed this plan in bad faith. It remains a longstanding principal of Chapter 13 adjudication that courts may only confirm those reorganization plans which the debtor has "proposed in good faith." *See* 11 U.S.C. § 1325(a)(3); *see also In re Ragsdale,* 15 B.R. 668, 670 (Bankr. N.D.Ga.1980) (examining the good faith requirement under the predecessor to section 1325(a)(3)). Thus, while the debtor bears the ultimate burden of proof on the issue, to the extent that a creditor preemptively can demonstrate an absence of good faith, or the affirmative presence of bad faith, it will enjoy a valid objection to confirmation. *See Shell Oil Co. v. Waldron (In re Waldron),* 785 F.2d 936, 937–41 (11th Cir.1986).

 To guide courts in evaluating such challenges, the Eleventh Circuit has adopted the following non-exclusive list of factors as evidence of a debtor's "good faith:"

 (1) The amount of the debtor's income from all sources;

---

**6.** The Court acknowledges that no other court has extended the Johnson rationale to the unique facts of a debtor who takes previously mortgaged property by devise. Nonetheless, it points out that at least two other courts have found Johnson to extend beyond the limited circumstance of a "Chapter 20" debtor. *See In re Threats,* 159 B.R. 241, 242–43 (Bankr.N.D.Ill.1993); *Citicorp Mortgage, Inc. v. Lumpkin (In re Lumpkin),* 144 B.R. 240, 240–241 (Bankr.D.Conn.1992).

(2) The living expenses of the debtor and his dependents;

(3) The amount of attorney's fees;

(4) The probable or expected duration of the debtor's Chapter 13 plan;

(5) The motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(6) The debtor's degree of effort;

(7) The debtor's ability to earn and the likelihood of fluctuations in his earnings;

(8) Special circumstances such as inordinate medical expenses;

(9) The frequency with which the debtor has sought bankruptcy relief;

(10) The circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors;

(11) The burden which the plan's administration would place on the trustee.

*In re Kitchens,* 702 F.2d 885, 888 (11th Cir. 1983). Thus, as applied within this Circuit, the "good faith" inquiry demands that courts examine the totality of the circumstances surrounding a debtor's bankruptcy case. *See In re Whipple,* 138 B.R. 137, 139 (Bankr. S.D.Ga.1991); *In re Wall,* 52 B.R. 613, 615 (Bankr.M.D.Fla.1985);

■ Here, First National appears to base its claim of bad faith upon an allegation that the Debtor has not devoted all of his disposable income to the plan. The Court acknowledges that the first, second and seventh of the *Kitchens* factors suggest that a debtor's commitment of disposable income should factor into any analysis of his "good faith." Moreover, it agrees that a debtor who does not fully commit his disposable income can-

not be said to have proposed his reorganization plan in good faith. *See In re Curry,* 77 B.R. 969, 969–70 (Bankr.S.D.Fla.1987). In this case, however, First National has not presented, nor can the Court find, any grounds upon which to justify such a finding of incomplete commitment. Rather, having thoroughly examined the schedules and plan of reorganization, the Court concludes that this Debtor in fact has devoted all of his disposable income to his plan. Furthermore, the Court finds none of the other indicia of bad faith present as contemplated by the *Kitchens* standard. As such, it rejects "bad faith" and "disposable income" as alternative bases for the Bank's objection to confirmation.

## CONCLUSION

For the abovementioned reasons, the Court concludes that First National actually does hold a "claim" against the Debtor's estate in bankruptcy, even though no "privity of contract" ever existed between it and the Debtor. As such, the Debtor may modify First National's rights as part of his reorganization plan. Furthermore, the Court finds no merit in First National's claim that this Debtor has proposed his plan in bad faith and that he has not committed all disposable income under its terms. In light of these findings, First National's Objection to Confirmation hereby is **DENIED.**

**IT IS SO ORDERED.**