**In re Joanne F. TRAPP, Debtor.**

No. 00–09987–W.

United States Bankruptcy Court, D. South Carolina.

Feb. 5, 2001.

Marvin G. Frierson, Columbia, SC, for debtor.

William K. Stephenson, Columbia, SC, trustee.

Richard R. Gleissner, Elizabeth H. ·McCullough, Finkel & Altman LLC, Columbia, SC, for creditors.

### ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Motion to Modify Stay and Objection to Plan of Reorganization (the "Motion") filed by the Bank of New York ("BNY") on December 15, 2000. BNY asserts that it is entitled to relief from the · automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and (2)[1] and moves for an order entitling it to permit actions in State Court for the foreclosure and eviction proceedings as to the subject property. Furthermore, BNY objects to any treatment in the Joanne F. Trapp's ("Debtor") Plan

of Reorganization as to its collateral. On December 26, 2000, Debtor, through her attorney, filed an Objection to § 362 Motion on the basis that the real property at issue is property of the estate and that BNY is adequately protected. After considering the pleadings in the matter and the arguments and evidence presented at the hearing on the Motion, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R.Civ.P. 52, made applicable in bankruptcy proceedings by Fed. R. Bankr.P. 7052.[2]

### FINDINGS OF FACT

1. BNY holds a valid, perfected, first mortgage lien on Debtor's real estate located at 3000 Green Hill Road, Gilbert, Lexington County, South Carolina 29054, as evidenced by a Note and Mortgage which were submitted into evidence.

2. The Note was entered into on September 20, 1996 by TMS Mortgage Inc., d/b/a The Money Store and Ronald C. Brewer. On the same date, the parties also executed a Mortgage, which was filed of record in the RMC Office of Lexington County on September 30, 1996. The Mortgage, which was signed by both Ronald C. Brewer and Geradette Brewer, secured a loan by The Money Store in the amount of $52,000.

3. By a document entitled "Corporation Assignment of Mortgage," which was filed of record on December 8, 1998, The Money Store assigned the Brewers' Mortgage to BNY.

4. On February 19, 1999, the Brewers transferred the property to Debtor. The transfer is evidenced by a General Warranty Deed, which was filed in the Lexing-

---

**1.** Further references to the Bankruptcy Code shall be by section number only.

**2.** The Court notes that to the extent any of the following Findings of Fact constitute Conclu-

sions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

ton County's RMC Office on February 26, 1999.

5. Debtor did not apply to BNY for an assumption of the Note and Mortgage. Furthermore, according to the evidence presented at the hearing on the Motion, it was not until after May of 2000 that BNY conducted a title search and discovered that the subject property had been deeded to Debtor.

6. Debtor has defaulted on BNY's Mortgage payments since March of 2000.

7. On May 25, 2000, The Money Store, through their corporate counsel, sent the Brewers a Right to Cure Letter which stated, in pertinent part:

> This letter serves as further notice that TMS Mortgage Inc. intends to enforce the provisions of the Note and Security Instrument. You must pay the full amount of the default on its loan by the thirtieth (30th) day from the date of receipt of this letter, or call the creditor to work out arrangements for payment. If you do either of those things, our client shall accelerate the entire sum of both principal and interest due and payable, and invoke any and all remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property.[3]

8. On November 3, 2000, Debtor filed for relief under Chapter 13 of the Bankruptcy Code.

9. A Chapter 13 Plan was filed on November 20, 2000. The Plan proposed to cure the arrears on the Mortgage and recommence monthly mortgage payment to BNY.[4]

10. On December 15, 2000, BNY filed an Objection to Plan of Reorganization and Motion to Modify Stay and Debtor objected to said Motion on December 26, 2000.

11. There is no evidence before the Court that Debtor knew about the due-on-sale clause in the Mortgage or contemplated bankruptcy when she acquired ownership of the property, which might indicate lack of good faith on her part.

## CONCLUSIONS OF LAW

In this case, BNY argues that the automatic stay should be lifted to permit it to proceed in State Court with foreclosure and eviction proceedings and further objects to the confirmation of the Plan of Reorganization filed by Debtor on November 20, 2000. BNY's Motion is based on two grounds. First, BNY argues that there is no debtor-creditor relationship between Debtor and BNY; therefore, the mortgage debt is not a "claim" within the meaning of §§ 1322(b)(2), (5), and (6) or § 101(5). As a result, BNY claims that Debtor cannot force it to accept the terms of the repayment proposed in the Plan. Second, BNY further argues that Debtor's Plan of Reorganization may not cure and reinstate BNY's claim, which was accelerated upon the expiration of the right to cure granted in the letter to the Brewers dated May 25, 2000.

---

**3.** The Mortgage has a due-on-sale clause which provides that: "If all or any part of the Property or any interest in it is sold or transferred ... without Lenders' prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument." However, Mr. Wiggins, Assistant Vice–President of The Money Store, testified at the hearing that the basis for the acceleration of the Note in this case was for the failure to pay and to exercise the curing rights prior to their expiration.

**4.** More specifically, the Plan states:

Long term or mortgage debt-ARREARAGE ONLY, to be paid to The Moneytree and Ronald and Geradette Brewer at $79.00 or more per month along with 10% interest. Regular payments to be made directly by the debtor beginning December, 2000.

The first question before the Court is whether a Chapter 13 debtor who is not in contractual privity with the mortgagee can repay a mortgage lien through the plan. Section 1322(b) generally allows a plan of reorganization to propose to modify the rights of creditors holding a "claim" against the estate. "Thus, 'claimholder' status presumptively forms a condition precedent to a creditor's mandatory participation in the debtor's plan." *In re Hutcherson*, 186 B.R. 546, 548 (Bankr.D.Ga. 1995). Prior to the Supreme Court decision in *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), courts generally held that "without privity of contract there is no debtor-creditor relationship and therefore an assignee may not cure the assignor's default through the plan." Bruce H. White & Maria H. Belfield, *May a Debtor Cure a Mortgage Default to Which He Is Not a Party Through a Chapter 13 Plan?*, 17 Am. Bankr.Inst. J. 22 (July/Aug.1998); *see also In re Wilkinson*, 99 B.R. 366 (Bankr. N.D.Ohio 1989); *Jim Walter Homes, Inc. v. Kelly (In re Kelly)*, 67 B.R. 508 (Bankr. S.D.Miss.1986); *Green v. Arlington Trust Co. (In re Green)*, 42 B.R. 308 (Bankr. D.N.H.1984).

In 1991, the Supreme Court decided the case of *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), which involved a "Chapter 20" debtor. The debtor in *Johnson* initially filed a Chapter 7 bankruptcy to halt the foreclosure on his farm. His personal liability on the notes was discharged through the bankruptcy; however, the mortgagee bank's rights to proceed against him *in rem* survived the bankruptcy, and the bank once again continued the foreclosure proceedings in state court. Prior to the foreclosure sale, the debtor filed a Chapter 13. The debtor's Chapter 13 plan proposed to make payments to the bank through the plan. The Court was thus faced with the issue of whether a mortgagee could be said to hold a "claim" in that case, even though it had no right to recovery against the debtor personally. In concluding that a mortgage lien securing an obligation for which a debtor' personal liability has been discharged falls within the definition of "claim" set forth in § 101(5), the Court analyzed the definition of "claim"[5] in that section and noted:

> Whether this surviving mortgage interest is a "claim" subject to inclusion in a Chapter 13 reorganization plan is a straightforward issue of statutory construction to be resolved by reference to "the text, history, and purpose" of the Bankruptcy Code.
>
> ... We have previously explained that Congress intended by this language to adopt the broadest available definition of "claim."

*Id.* at 82, 111 S.Ct. 2150.

Following the Supreme Court decision in *Johnson*, the courts addressing the issue of whether a Chapter 13 debtor who owned real property could cure the mortgage through the plan, even if there was no privity between the debtor and the mortgagee, became split in their views. Some courts restricted the broad interpretation of "claim" adopted by the Supreme Court to "Chapter 20" cases. *See, e.g.*

**5.** Section 101(5) defines "claim" as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, continent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

*Ulster Savings Bank v. Kizelnik (In re Kizelnik)*, 190 B.R. 171, 179 (Bankr. S.D.N.Y.1995) ("This Court believes that *Johnson* should be limited to its peculiar facts and should therefore only govern the resolution of 'Chapter 20' cases involving a single mortgagor whose Chapter 13 bankruptcy is preceded by one under Chapter 7."); *In re Mitchell*, 184 B.R. 757 (Bankr. C.D.Ill.1994). However, other courts concluded that the decision in *Johnson* mandated future decisions "permitting a Chapter 13 debtor who is the owner of real property to cure a pre-petition default under a mortgage, even if that debtor lacks privity with the mortgagee." *In re Rutledge*, 208 B.R. 624, 628 (Bankr.E.D.N.Y. 1997); *see also In re Allston*, 206 B.R. 297 (Bankr.E.D.N.Y.1997); *In re Wilcox*, 209 B.R. 181 (Bankr.E.D.N.Y.1996); *In re Hutcherson*, 186 B.R. 546 (Bankr.N.D.Ga. 1995). Furthermore, § 102(2) expressly defines the terms "claim against the debtor" as a "claim against property of the debtor." This is precisely the situation in this case, in that Debtor is the rightful owner of the property at issue on which BNY has a claim. Therefore, the Court is persuaded by the latter line of cases and finds that, following the holding of the Supreme Court in *Johnson*, BNY holds a "claim" against Debtor's estate, even though there is no privity between the bank and Debtor. As the court in *In re Allston* found, "even though no privity of contract ever existed between [the mortgagee] and the Debtors . . . it is undisputed . . . that the debtors own the Property as to which the bank holds a lien and that the Property is property of the estate." *Id.* at 299. Therefore, it follows that BNY holds a "claim" against Debtors.

The next question then becomes whether Debtor's Plan of Reorganization, which proposes to cure the arrears on the Mortgage and recommence monthly mortgage payments to BNY, may be confirmed despite the fact that the debt to BNY was accelerated. In order to address this issue, a close reading of the subsections of § 1322(b) is required. Generally speaking, § 1322(b)(2) provides that a Chapter 13 plan may "modify the rights of holders of secured claims." Furthermore, the plan may provide "for the curing or waiving of any default." § 1322(b)(3). The right to modify a secured claim, however, is limited by the express language in §§ 1322(b)(2) and (5). In fact, while a debtor may not "modify" the claim which is secured solely by the debtor's principal residence, the plan may propose for the "curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." In the case of *Grubbs v. Houston First American Savings Assoc.*, 730 F.2d 236 (5th Cir.1984), the court was faced with the exact issue: "whether a bankruptcy court may decline to approve a Chapter 13 plan solely because a debtor proposes to pay off in installments during the term of the plan past-due amounts on a promissory note that was properly accelerated and became fully due." *Id.* at 237. The court analyzed the legislative history of § 1322(b) and, following the holding in *In re Taddeo*, 685 F.2d 24 (2d Cir.1982), it noted that:

> "First, we think that the power to cure must comprehend the power to 'de-accelerate.' This follows from the concept of 'curing a default.' A default is an event in the debtor-creditor relationship which triggers certain consequences— here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of

'cure' used throughout the Bankruptcy Code.

Secondly, we believe that the power to 'cure any default' granted in § 1322(b)(3) and (b)(5) is not limited by the ban against 'modifying' home mortgages in § 1322(b)(2) because we do not read 'curing defaults' under (b)(3) or 'curing defaults and maintaining payments' under (b)(5) to be modifications of claims."

*Id.* at 241 (quoting *In re Taddeo*, 685 F.2d at 25–26). Furthermore, the court interpreted the language in § 1322(b)(5) "on which the last payment is due" to mean "on which the last payment before acceleration is due." *Id.* at 241 n. 7.[6] The court ultimately concluded that neither the curing of the default proposed under the plan nor the plan's provision for payment of the matured amount on the debt "may be regarded as proposals to 'modify' [the debtor's] home-mortgage indebtedness" which is prohibited under § 1322(b).

 Other courts appear to be in agreement that "[i]f a creditor holding a claim secured solely by a security interest in real property that is the debtor's principal residence accelerates payments on the debt as a result of the debtor's default, then the plan may decelerate the payments, reinstate the regular payments, and cure the default." Butler, *Bankruptcy Handbook*, ¶ 12.42 at p. 12–43 (1997 & Supp.1998–2000); *Jim Walter Homes, Inc. v. Spears (In re Thompson)*, 894 F.2d 1227 ("[A]ll circuits that have addressed the issue have agreed that contractual acceleration of mortgage debt upon default does not end the debtors' right to cure the mortgage default in bankruptcy by paying the amount of the original default, rather than the entire accelerated debt."); *In re Roach*, 824 F.2d 1370, 1373 (3d Cir.1987) ("Thus far, each court of appeals that has decided whether a home mortgage default may be cured after contractual acceleration of the full mortgage debt has provided an affirmative answer.").[7] Thus, this Court concludes that the fact that the debt to BNY was accelerated due to Debtor's default does not prohibit the curing of such default through the Chapter 13 Plan. Furthermore, the Court notes that because contractual privity still exists between BNY and the Brewers, BNY has the right to proceed against the Brewers, subject to relief from the co-debtor stay, and such right to proceed against the original signers of the Note and Mortgage is not altered by this Court's present ruling.

From the foregoing arguments, it is therefore

ORDERED that the Bank of New York's Motion to Modify Stay is denied.

IT IS FURTHER ORDERED that the Bank of New York's Objection to Plan of Reorganization is overruled.

**AND IT IS SO ORDERED.**

---

**6.** The court in *Grubbs* ultimately noted that the creditor's second home-lien encumbrance was not a long-term mortgage having its last payment due after the date of the final payment under the plan, as required by § 1322(b)(5), rather, it was a short term loan, thus the acceleration was curable under § 1322(b)(3). In the case presently before the Court, however, the indebtedness became due on October 1, 2011. Therefore, because the subject Mortgage is long-term, the Court finds that its acceleration is curable under § 1322(b)(5).

**7.** However, the right to cure a default on an accelerated debt would terminate if a foreclosure sale already occurred. *See, e.g.* § 1322(c)(2).