**In re CURINTON, Charles
Bernard Debtor.**

No. 02–14111–6J3.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

July 24, 2003.

James T. Harper, Jr., Minneola, FL, for Debtor.

Laurie K. Weatherford, Winter Park, FL, trustee.

### MEMORANDUM OPINION DENYING WESTERN UNITED LIFE ASSURANCE COMPANY'S MOTION FOR RELIEF FROM STAY

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on May 2, 2003, on the Motion for Relief from Stay (Doc. No. 10), filed by Western United Life Assurance Company ("Western United"). In the Motion, Western United argues that relief from the stay should be granted so that Western United can conduct a foreclosure sale of the property in which the debtor, Charles Curinton, resides because the debtor lacks privity with Western United. For the reasons stated below, the Motion for Relief from Stay is denied.

The debtor was the founder and sole shareholder of Mega Nega Productions, Incorporated ("Mega"). Mega bought a residential home located in Orlando, Florida, and executed a promissory note and mortgage with Blackman Enterprise, Incorporated ("Blackman") to cover the $62,000.00 purchase price. Blackman then assigned the mortgage, for value, to Western United.

In August 1999, Mega transferred title of the house to the debtor individually by quitclaim deed. Mega then went out of business and was administratively dissolved by the Florida Secretary of State. Mega no longer exists as a legal entity. After receiving title to the home, the debtor individually started making the monthly mortgage payments. However, the debtor made no attempt to amend the mortgage agreement, now held by Western United, to reflect the change in ownership. Therefore, although the debtor was now the record title holder to the home, Mega remained listed as the borrower in the mortgage and obligated on the promissory note. The debtor is not individually liable on the note.

Following the transfer of title between Mega and the debtor, Western United accepted mortgage payments from the debtor. Western United also permitted the debtor to cure a default in June 2002. Nevertheless, after a subsequent default, Western United filed a foreclosure action on November 19, 2002, in the Circuit Court of Orange County (Case No. 02–CA–7478) to foreclose its mortgage and security interest in the property. Western United obtained a final judgment of mortgage foreclosure setting the foreclosure sale for December 31, 2002.

Five days prior to the sale, on December 27, 2002, the debtor filed for Chapter 13 bankruptcy protection. The debtor seeks to cure any outstanding arrearage under

the mortgage and include the mortgage payments to Western United in his Chapter 13 plan. Western United filed a proof of claim (Claim No. 1) indicating a principle unsatisfied debt of $54,431.51 and arrearage of $13,509.35 as of the petition date.

■ Western United now seeks relief from the automatic stay to proceed with the foreclosure sale. In accordance with Section 362(d) of the Bankruptcy Code,[1] a court may grant relief from the automatic stay for "cause."[2] Western United contends that cause for relief exists in this case because the debtor is merely a title holder and is not liable as the borrower on the underlying mortgage. Therefore, the debtor lacks privity[3] with Western United and cannot include the mortgage payments in the Chapter 13 plan.

There is a split among the courts on whether a debtor can include a mortgage in his or her Chapter 13 plan despite the absence of privity between the borrower and the mortgagor. The split centers on the courts' interpretation of the term "claim" as it pertains to Chapter 13 proceedings. One line of cases, anchored by the decision of the Supreme Court of the United States in *Johnson v. Home State Bank*, interprets the term "claim" broadly and permits debtors to cure defaulted mortgages within a Chapter 13 plan even when no privity of contract exists between the debtor and creditor. *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Bank of America v. Garcia (In re Garcia)*, 276 B.R. 627 (Bankr.D.Ariz.2002); *In re Allston*, 206 B.R. 297 (Bankr.E.D.N.Y.1997); *In re Hutcherson*, 186 B.R. 546 (Bankr. N.D.Ga.1995); *In re Trapp*, 260 B.R. 267 (Bankr.D.S.C.2001); *In re Rutledge*, 208 B.R. 624 (Bankr.E.D.N.Y.1997); *Citicorp Mortgage, Inc. v. Lumpkin (In re Lumpkin)*, 144 B.R. 240 (Bankr.D.Conn.1992). A second line of cases interprets the term "claim" narrowly, distinguishing *Johnson* and holding that a "claim" does not exist for matters where privity is absent between the debtor and creditor. *In re Parks*, 227 B.R. 20 (Bankr.W.D.N.Y.1998); *Ulster Savings Bank v. Kizelnik (In re Kizelnik)*, 190 B.R. 171 (Bankr.S.D.N.Y. 1995); *In re Threats*, 159 B.R. 241 (Bankr. N.D.Ill.1993). The essential difference lies in how the courts define the term "claim."

In *Johnson*, the Supreme Court of the United States held that the term "claim" included obligations for which a debtor's personal liability had been excused. *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). In that case, Home State Bank held a $470,000 mortgage secured by the home of Curtis Reed Johnson ("Johnson"), the Chapter 7 debtor.[4] After Johnson defaulted, the

---

1. Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

2. Section 362(d)(1) provides relief from the automatic stay for "cause," while § 362(d)(2) provides relief from the automatic stay for situations in which the debtor does not have equity in the property included in the bankruptcy or the property included in the bankruptcy is not necessary to an effective reorganization by the Chapter 13 debtor. Only § 362(d)(1) is applicable to this dispute.

3. Privity of contract is that connection or relationship which exists between two or more contracting parties; it is essential to the maintenance of an action on any contract that there should subsist a privity between the plaintiff and defendant in respect to the matter sued upon. *Sumitomo Corp. of Amer. v. M/V Saint Venture*, 683 F.Supp. 1361 (M.D.Fla.1988)(citing *Black's Law Dictionary* (1957)).

4. *Johnson*, at 80, 111 S.Ct. 2150. At the time the mortgage was executed, the debtor co-owned the farm property with his wife, however, by the time the Chapter 13 petition was

bank began foreclosure proceedings against Johnson in state court. *Id.* at 80, 111 S.Ct. 2150. Prior to the foreclosure sale, Johnson filed for Chapter 7 protection and received a discharge of his personal liability on the mortgage owed to the bank. *Id.* Although Johnson's personal liability (*in personam*) to the bank was discharged, the bank's right to proceed against Johnson's property (*in rem*) survived the Chapter 7 liquidation. *Id.*

Following Johnson's discharge, the bankruptcy court lifted the automatic stay protecting Johnson's estate and the bank renewed its foreclosure effort. *Id.* The state court eventually entered a $200,000 *in rem* judgment in favor of the bank. *Id.* Johnson then filed for Chapter 13 protection shortly before the date of the foreclosure sale. He included the bank's mortgage on the farm property as a claim included in his Chapter 13 plan. *Id.* Over the bank's objection, the court confirmed Johnson's Chapter 13 plan. *Id.* at 81, 111 S.Ct. 2150.

The bank appealed the decision, arguing that a debtor is prohibited from including within a Chapter 13 plan a mortgage used to secure an obligation for which a debtor's personal liability was discharged in an earlier Chapter 7 bankruptcy. *Id.* The bank argued that a debtor could only include debts in a Chapter 13 plan on which the debtor is personally liable. The district court and the Eleventh Circuit Court of Appeals agreed with the bank and held that the Bank no longer had a "claim" against the debtor because the debtor's personal liability on the promissory notes was discharged in his prior Chapter 7

bankruptcy. *Id.* Therefore, Johnson could not cure arrears arising under the mortgage in his Chapter 13 plan.

The Supreme Court overruled the lower courts, finding that the term "claim" is interpreted broadly and encompasses obligations on which the debtor is no longer personally liable. *Id.* at 84, 111 S.Ct. 2150. The Court reasoned that a claim against the debtor need not be against the debtor personally (*in personam*), but could consist solely of a claim against the debtor's property (*in rem*). Thus, the debtor could include the bank's claim against the debtor's property within his Chapter 13 plan. *Id.* at 85, 111 S.Ct. 2150.

The Supreme Court relied on several statutory arguments in reaching its holding. First, the Court found that in prior cases it interpreted Congress's language in § 101(5) of the Bankruptcy Code to embody the broadest meaning possible for the term "claim." *Id.* at 83, 111 S.Ct. 2150 (citing *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)). For instance, in *Davenport*, the Court concluded that "right to payment" meant nothing more than an enforceable obligation, which implies that an obligation could be against a debtor personally (*in personam*) or against a debtor's property (*in rem*). *Id.* (citing *Davenport*, at 559, 110 S.Ct. 2126). Second, the Court found that § 502(b)(1) of the Bankruptcy Code expressly provides that a claim must be allowed if the claim is enforceable against *either* the debtor or his property.[5] Thus, § 502(b)(1) envisions circumstances in which a claim, such as a

---

filed, he had acquired his wife's interest in the property. *Id.* Thus, in *Johnson*, the debtor was considered the sole owner of the farm in dispute. *Id.*

**5.** *Id.* at 85, 111 S.Ct. 2150. Section 502(b)(1) provides that the court "shall determine the

amount of [a disputed] claim ... and shall allow such claim in such amount, except to the extent that ... such claim is unenforceable against the debtor and *property of the debtor.*"

mortgage lien which survives a Chapter 7 proceeding even after no personal liability exists, may consist of nothing more than an obligation against a debtor's property. *Id.* Third, the Court found that the language of § 102(2) infers that creditors who have a claim solely against a debtor's property (and not against a debtor personally) nonetheless have a claim against the debtor in bankruptcy.[6] Cases decided since *Johnson* have used similar reasoning to reach the same result.

For instance, in *In re Garcia,* creditor Bank of America sought relief from the stay to enforce its deed of trust encumbering the home of the debtors, Javier and Adriana Garcia. The Garcias purchased their home from the original owner's estate following the owner's death. *Bank of America v. Garcia (In re Garcia),* 276 B.R. 627, 628–29 (Bankr.D.Ariz.2002). The debtors made timely payments on the property for several months, but eventually defaulted. *Id.* at 629. The debtors filed for Chapter 13 protection and wanted to cure the default. *Id.* Bank of America opposed, seeking relief from the automatic stay to continue with foreclosure proceedings, arguing that the debtors could not cure the default or modify the terms of the deed because the debtors were not in privity with the Bank. *Id.* at 630. Relying on *Johnson,* the bankruptcy court found that the creditor's argument was flawed because "the Bankruptcy Code recognizes a debtor-creditor relationship whenever a creditor holds a claim secured by the debtor's property, even if the debtor has no personal liability." *Id.* at 631.

The court in *In re Allston* reached a similar conclusion. *In re Allston,* 206 B.R. 297 (Bankr.E.D.N.Y.1997). In *Allston,*

creditor Republic National Bank of New York held a note and mortgage secured by property owned by the debtors, Gerald and Deborah Allston. *Id.* at 298. The debtors acquired title to the property from their daughter, Anissa Allston, but never changed the mortgage to reflect the change in ownership. *Id.* Therefore, Anissa remained the borrower on the mortgage held by Republic. For four years following the transfer, the debtors made timely payments to Republic totaling over $60,000. *Id.* Subsequently, the debtors filed for Chapter 13 protection, seeking to repay Republic's claim in full via their Chapter 13 plan. *Id.* Republic objected, claiming that because the debtors' daughter signed the mortgage and not the debtors themselves, the debtors lacked contractual privity with Republic and thus had no legal basis for modifying Republic's rights against the property. *Id.* Ultimately, the bankruptcy court rejected Republic's assertion, holding that Republic held a claim against the debtor within the meaning of § 102(2) and § 502(b)(1) of the Bankruptcy Code to the extent that Republic asserted a claim against the debtor's property. *Id.* at 299. Thus, a claim existed solely because Republic held a lien on property owned by the debtors. Privity was not required for the debtors to include the mortgage within a Chapter 13 plan. *Id.*

Similarly, in *In re Hutcherson,* the bankruptcy court held that creditor First National Bank held a claim against the debtor even though no privity of contract existed between the parties. *In re Hutcherson,* 186 B.R. 546, 551 (Bankr.N.D.Ga. 1995). First National held a mortgage and promissory note on a residence owned by

---

**6.** *Id.* at 86, 111 S.Ct. 2150. To support this conclusion, the Supreme Court cited the legislative history underlying § 102(2) which "explain that this rule of construction con-

templates, *inter alia,* 'nonrecourse loan agreements where the creditor's only rights are against property of the debtor, and not against the debtor personally.' " *Id.*

the debtor's mother. *Id.* at 547. Following the mother's death, the debtor inherited a 25% interest in the subject property. *Id.* at 548. Subsequently, the debtor filed for Chapter 13 protection, seeking to repay the mortgage in full via the Chapter 13 plan. *Id.* First National objected to the Chapter 13 plan, stating that the debtor lacked privity with First National, and therefore, the debtor could not force the creditor to accept the terms of payment provided by the debtor's reorganization plan. *Id.* at 549. Citing the reasoning in *Johnson*, the *Hutcherson* court disagreed, explaining that First National's claim against the debtor's property amounted to a claim against the debtor's bankruptcy estate.[7] Therefore, the court held that the debtor was permitted to modify First National's rights via a Chapter 13 reorganization plan.[8]

Although the *Johnson* view predominates, some courts do hold that privity is required to include a claim in a Chapter 13 plan. *In re Parks*, 227 B.R. 20 (Bankr. W.D.N.Y.1998); *Ulster Savings Bank v. Kizelnik (In re Kizelnik)*, 190 B.R. 171, (Bankr.S.D.N.Y.1995); *In re Threats*, 159 B.R. 241 (Bankr.N.D.Ill.1993). These courts, such as the bankruptcy court in *In re Parks*, reached their conclusion by minimizing the breadth, scope, and ultimate conclusion of *Johnson* that a debtor may restructure debts, on which he is not personally liable, if the claim of the creditor encumbers property the debtor owns.

Other courts reached their conclusion because of difficult factual situations in which the debtor's motives reek of bad faith. For example, in *In re Kizelnik*, a mortgagor's granddaughter, a mere tenant

7. *Id.* at 550. *See also In re Jordan*, 199 B.R. 68 (Bankr.S.D.Fla.1996). In *Jordan*, the secured creditor objected to the debtor including in his Chapter 13 plan a mortgage on a residence owned partly by the debtor and partly by his mother because the debtor lacked privity with the creditor; only the mother, the original mortgagor had privity with the creditor. *Id.* at 69. The court held that, as in *Hutcherson*, the transfer of ownership from the mortgagor to the debtor resulted in the mortgagee holding a claim against the debtor's estate in bankruptcy, even though no privity ever existed between the creditor and the debtor. *Id.* (citing *Hutcherson*, at 551).

8. *Id.* at 551. *See also In re Trapp*, 260 B.R. 267 (Bankr.S.C.2001). In *Trapp*, the original mortgagors transferred property via deed to the debtor, but failed to change the mortgage to reflect the change in ownership. *Id.* at 268. Following the debtor's default on the mortgage payments, the debtor sought Chapter 13 protection and wanted to include his mortgage payments in his Chapter 13 plan. *Id.* The creditor objected because the debtor lacked privity with the creditor. *Id.* The Bankruptcy Court held that, because the debtor owned the property against which the creditor held a lien and the property was therefore property of the estate, the creditor

held a claim against the debtor, even though there was no privity between the creditor and the debtor. *Id.* at 271. *See also In re Rutledge*, 208 B.R. 624 (Bankr.E.D.N.Y.1997). In *Rutledge*, the creditor claimed that the debtor's inclusion of mortgaged property within his Chapter 13 plan was improper because the debtor received property in a transfer from the original mortgagor and therefore lacked direct privity with creditor. *Id.* at 625. The debtor wanted to cure the default on the mortgage and continue making regular payments via his Chapter 13 plan. *Id.* at 626. The court held that real property owners filing Chapter 13 could cure a prepetition mortgage default despite lack of privity with the mortgagee. *Id.* at 628. *See also Citicorp Mortgage, Inc. v. Lumpkin (In re Lumpkin)*, 144 B.R. 240 (Bankr.D.Conn. 1992). In *Lumpkin*, the creditor objected to the debtor including a mortgage in his Chapter 13 plan because the debtor was not the original mortgagor and thus lacked privity with the creditor. *Id.* The Bankruptcy Court held that the debtor's Chapter 13 plan could include a claim where there was no personal liability to the creditor regardless of what circumstances brought about the lack of personal liability. *Id.* at 242.

in the subject property, filed for Chapter 13 to reorganize the payments on her grandfather's mortgaged property following his default on that mortgage. *Kizelnik*, at 175. The bankruptcy court denied confirmation of the debtor's Chapter 13 plan. The court found that even if the debtor intended to assume full legal responsibility for her grandfather's mortgage, there was no legal basis for forcing the mortgagee to delay foreclosure and collection efforts when the grandfather was still the record title owner and the granddaughter was a tenant or, at best, held an option to purchase the property. *Id.* at 176. The court further stated that the Bankruptcy Code was intended to provide relief only to true debtors, not those like the granddaughter in *Kizelnik* who pursued her Chapter 13 case to provide relief to another party, not herself. *Id.* at 178. Apparently, Ms. Kizelnik filed her bankruptcy to stop the foreclosure of her grandfather's property, not to reorganize her own debts.

Lastly, other courts reached their conclusion because of specific clauses in the mortgages, particularly due-on-sale clauses, which serve as a separate basis for limiting a debtor's ability to include such claims in their Chapter 13 plan. For instance, in *In re Threats*, the debtor received title to a home already encumbered by a mortgage. Essentially, the debtors bought the home subject to someone else's mortgage. *Threats*, at 241. The mortgage contained a due-on-sale clause, which caused the amount due on the mortgage to accelerate upon the title transfer. *Id.* at 242. After acquiring the home, the debtors allowed the mortgage to fall over $16,000 into default. *Id.* The debtors eventually filed for Chapter 13 protection and argued that, although they themselves were not liable on the mortgage, they could cure defaults on the mortgage because the creditor's claim was a claim against the debtor's property. *Id.* The bankruptcy court found that, although the creditor had an *in rem* claim against the estate, the debtors could *not* cure the mortgage by including the mortgage in the Chapter 13 plan because allowing cure and inclusion would impermissibly modify the creditor's rights under the mortgage's due-on-sale clause. *Id.* at 243. The court properly enforced the due-on-sale clause in the mortgage accelerating the loan balance, and, given that ruling, the debtors were unable to pay the entire mortgage in full and could not proceed with the Chapter 13 case.

*Threats* is distinguishable from *Johnson* and this case due to the presence of a due-on-sale clause. In *Threats*, the debtors possessed title to property subject to a due-on-sale clause which entitled the creditor to immediate payment of the full mortgage value in the event title to the property was transferred. *Id.* Here and in *Johnson*, there was no due-on-sale clause at issue.

 This Court rejects the decisions of the few courts that continue to require privity between debtors and creditors. The Supreme Court in *Johnson* has told us that a debtor can include a claim in a Chapter 13 plan, even when the debtor is not personally liable for the underlying debt. Recall that under *Johnson*, a creditor need not hold a personal claim against a debtor for a creditor's claim to be included in the debtor's bankruptcy estate; it is sufficient that a debtor owns property against which a creditor holds a lien for that property to be included in the debtor's bankruptcy estate. Also, as *Johnson* acknowledged, the statutory language of §§ 101(5), 502(b)(1), and 102(2) of the Bankruptcy Code plainly indicates that a claim against property held by a debtor is

sufficient to constitute a claim within a Chapter 13 setting.

Applying this standard to this case, the debtor admittedly lacks personal liability with Western United. Mega, who no longer exists legally, remains the borrower under the mortgage and the promissory note. However, the debtor has been the title holder of the home since August 1999. The debtor has made payments on the mortgage since 1999, all of which Western United has accepted. Western United's argument that the debtor should be prevented from including its claim against the debtor's property within the debtor's Chapter 13 plan fails pursuant to the statutory arguments advanced by the United States Supreme Court in *Johnson*. Pursuant to *Johnson*, the debtor *can* include the subject property in the debtor's Chapter 13 plan because Western United has a claim against the debtor's property.

Public policy and equitable considerations also support this result. Interpreting the term "claim" broadly prevents lending institutions from manipulating bankruptcy law to thwart a debtor's good faith attempt to reorganize a debt in bankruptcy. For example, in the instant case, the debtor received title to his home in August 1999. The debtor personally made, and Western United accepted, payments for three full years following the title transfer. Also, Western United permitted the debtor to cure a default against the property over three years following the title transfer. The debtor made the payments in good faith, and, now that the debtor wishes to include the mortgage within the Chapter 13 plan, the debtor should not be prevented from doing so simply because the debtor lacks privity with Western United. Given that Western United was willing to overlook the formalities of the mortgage contract during the three years following the transfer of title

between Mega and the debtor, it would offend justice to permit Western United to utilize the same mortgage contract to prevent the debtor from including the claim within his Chapter 13 plan. If a creditor is willing to accept payment from a party not formally in privity of contract with that creditor, the creditor should not later be permitted to stop the same party from including the debt in a bankruptcy case, especially in situations where the party has a long history of good faith dealing with the creditor.

However, the Court clearly can envision scenarios where a debtor obtains an interest to property and attempts to restructure the mortgage debt encumbering the property in bad faith. Perhaps family members repeatedly transfer title to mortgaged property between them and then file successive bankruptcy cases to delay foreclosure actions and with no intent or ability to pay the legitimate debt. A good example of a variation of this type of bad faith filing was illustrated in the *Kizelnik* decision.

Ms. Kizelnik lived in the home of her grandparents, mortgagors Moses and Rivka Stein (the "Steins"), who had mortgaged the property to Ulster Savings Bank ("USB"). *Kizelnik*, at 173. The Steins executed the mortgage covering the home in December 1987. *Id.* The Steins first defaulted in May 1992, and USB obtained a foreclosure judgment in May 1993. *Id.* The Steins filed a motion alleging improper service of process and obtained a stay pending a hearing scheduled for September 1993. *Id.* The stay was lifted when the Steins failed to appear at the September 1993 hearing. *Id.* Various legal maneuvers by both the Steins and USB continued as above, and in total, the foreclosure sale requested by USB was ultimately delayed until July 1994. *Id.* At that time, just as USB was finally nearing

its goal, Kizelnik filed her Chapter 13 petition. *Id.* at 174.

Kizelnik argued that she should be permitted to stay USB from pursuing its secured creditor rights under state law, decelerate and reinstate the Stein mortgage, and cure the arrearage over five years. *Id.* at 175. This was after USB had received no payments from the Steins for over three years and USB repeatedly had been frustrated in its efforts to sell the collateral despite three separate rulings granting USB the right to foreclose. *Id.* at 176. Kizelnik argued for these remedies despite her complete lack of ownership in the Stein house, lack of personal liability on the Stein note and mortgage, and total inability to pay the full amount of contractual arrearage via the Chapter 13 plan proposed.

 *Kizelnik* is an example of an instance where the court should exercise its discretion to deny confirmation due to bad faith. When a debtor endeavors to utilize a bankruptcy case to delay the legitimate efforts of creditors and the debtor lacks intent or ability to actually pay the debt, the debtor is acting in bad faith and the debtor's plan should not be confirmed. Section 1325(a)(3) of the Bankruptcy Code requires courts to find that each and every case has been proposed in good faith. The tricks tried by Ms. Kizelnik or as envisioned by this court above cannot and should not be tolerated because they demean and abuse the bankruptcy system. However, the proper response is not to limit good faith debtors who may lack privity but who have every intention and the ability to pay a mortgage encumbering their property from including the claim in their Chapter 13 plan. Adopting a policy of universal exclusion of *in rem* claims fails to serve honest debtors who have fallen behind in payments but who honestly intend to pay the arrearage and keep their homes. Ultimately, in order to consistently serve both equity and public policy, each court must make a case-by-case determination regarding a debtor's motivation for filing Chapter 13. A blanket rule does not work.

In conclusion, this Court holds, consistent with *Johnson,* privity is not essential. A debtor can include an *in rem* claim in a Chapter 13 plan subject to good faith limitations and any limitation in the underlying mortgage, such as due-on-sale clauses. Accordingly, Western United's Motion for Relief from Stay (Doc. No. 10) is denied. A separate order consistent with this opinion shall be entered.