**In re Thelma E. ALLEN, Debtor.**

**No. 03–0571.**

United States Bankruptcy Court,
District of Columbia.

Sept. 5, 2003.

Charles R. Allen, Washington, DC, for Thelma E. Allen and Charles R. Allen.

L. Darren Goldberg, James E. Clarke, Draper & Goldberg, PLLC, Leesburg, VA, for Wells Fargo Bank Minnesota, N.A. as Trustee.

## DECISION AND ORDER REGARDING MOTION FOR STAY PENDING APPEAL

S. MARTIN TEEL, JR., Bankruptcy Judge.

 The court addresses a motion for stay pending appeal filed by the debtor, Thelma E. Allen ("Mrs. Allen"), and her son, Charles R. Allen ("Mr. Allen"), regarding an order that annulled the automatic stay and the co-debtor stay that had arisen in this case under, respectively, § 362(a) and § 1301 of the Bankruptcy Code (11 U.S.C.). Specifically, the order annulled the stays with respect to a foreclosure sale by Wells Fargo Bank Minne-

sota, N.A., as Trustee ("Wells Fargo") of Mr. Allen's District of Columbia residence ("the Property"). As part of their grounds for seeking a stay, the Allens' motion incorporates a motion for reconsideration filed under F.R. Civ. P. 59. The court has denied that motion for reconsideration for reasons stated in a decision issued today which elaborates on the grounds for annulling the bankruptcy stays. Applying the usual four factors for addressing a stay pending appeal, the court will deny a stay pending appeal, but will grant a stay of short duration to permit the Allens to seek a stay pending appeal from the district court.

## I

### LIKELIHOOD OF SUCCESS ON APPEAL

When a sole mortgagor is barred from commencing a bankruptcy case, the Bankruptcy Code is not intended to force the mortgagee to engage in a new bankruptcy case commenced by a wholly unexpected new debtor whose very ownership interest itself constitutes a breach of mortgage covenants and a ground for accelerating the mortgagor's debt and foreclosing on the mortgage. That proposition, and a finding that Wells Fargo was unaware of Mrs. Allen's bankruptcy case when it proceeded with the foreclosure sale, were the principal grounds upon which this court annulled the stays. Given the deferential standard of review on appeal, there is scant likelihood of the district court's reversing that ruling on appeal.

 The standard of review on the appeal of an order annulling bankruptcy stays is whether the bankruptcy court abused its discretion.[1] This circuit's court

1. See Bunch v. Hoffinger Indus. (In re Hoffinger Indus.), 329 F.3d 948, 954 (8th Cir.

2003); In re Gruntz, 202 F.3d 1074, 1084 n. 9 (9th Cir.2000) (en banc); In re Soares, 107

of appeals has observed that an abuse of discretion will exist, first, if the trial court relied on the wrong legal standards. *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 595 (D.C.Cir.1996). Once it is determined that the trial court applied the correct legal standards, however, an appellate court:

> will reverse the [trial] court [only] if its decision rests on clearly erroneous factual findings or if it leaves [the appellate court] with a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.

*Magaw*, 102 F.3d at 596 (internal quotations omitted).[2]

### A. Correct Legal Standards Were Applied

The court's decision relied on appropriate legal standards for annulling bankruptcy stays. Because Wells Fargo was unaware of Mrs. Allen's ownership interest or of her bankruptcy case when it sold the property at foreclosure to a third party, and because Wells Fargo would have obtained relief from the stays to proceed with foreclosure had it known of the bankruptcy case before foreclosing, annulment of the automatic stay and co-debtor stay was appropriate. *See In Mut. Benefit Life Ins. Co. v. Pinetree, Ltd. (In re Pinetree, Ltd.)*, 876 F.2d 34 (5th Cir.1989); *Albany Partners. Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 675–76 (11th Cir.1984). In addition, this court did not err in the legal standards it applied to the subsidiary question of whether, if Wells Fargo had been aware of the bankruptcy case, relief from the automatic stay to permit the prospective foreclosure would have been granted based on an abuse of the bankruptcy system, bad faith, and inability of Mrs. Allen's bankruptcy case (as that of an owner whose ownership violated mortgage covenants) to address Wells Fargo's debt.

### B. The Findings of Fact Were Not Clearly Erroneous

The basic facts (underlying the court's ultimate discretionary findings of abuse of the bankruptcy system, bad faith, futility of the bankruptcy case, and cause for annulling the stay) are not in dispute except for the finding that Wells Fargo had no knowledge of Mrs. Allen's bankruptcy case when it foreclosed.[3] That finding was not clearly erroneous. The Allens' objections regarding Wells Fargo's evidence of its lack of knowledge were waived because the Allens failed to raise them at the trial.

### C. There Was No Clear Error of Judgment in Applying Discretionary Standards in Annulling the Stays

Left for scrutiny on appeal are this court's ultimate findings, the discretionary

---

F.3d 969, 973 n. 4 (1st Cir.1997); *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1023 (10th Cir.1994); *Laguna Assocs. L.P. v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. L.P.)*, 30 F.3d 734, 737 (6th Cir.1994); *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2nd Cir.1990).

**2.** This standard has been applied in another circuit to the appellate review of a decision regarding annulment of a bankruptcy automatic stay. *See In re Posner*, 700 F.2d 1243, 1246 (9th Cir.), *cert. denied*, 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983). A district court probably need not be reminded that if the trial court's decision passes muster under the standards of *Magaw*, the appellate court may not substitute its judgment for that of the trial court. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

**3.** The Allens contend that Wells Fargo failed to make a *prima facie* case on various points. However, there was more than sufficient evidence to support all of the court's findings. The ultimate burden of persuasion on annulling the automatic stay for cause under 11 U.S.C. § 362(d)(1), it may be noted, was on the Allens. *See* 11 U.S.C. § 362(g)(2).

decisions calling for an exercise of judgment in applying relevant factors. The judgment calls this court made would not leave an appellate court, under the *Magaw* standard of review, "with a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Magaw*, 102 F.3d at 596.

That the findings of abuse of the bankruptcy system, bad faith, and futility of Mrs. Allen's bankruptcy case were not clear errors of judgment is readily evident from a brief chronology of the events that transpired:

| | |
|---|---|
| 1986: | Mr. Allen acquires ownership of the Property. |
| 1986–1999: | Mrs. Allen contributes to renovation of the Property (and this is the basis for her claiming an equitable interest in the Property). |
| August 1999: | Mr. Allen, as sole record owner of the Property, executes a Note and a Deed of Trust (duly recorded by Wells Fargo) granting Wells Fargo a mortgage lien on the Property. The Deed of Trust contains a due-on-transfer clause, as well as a covenant of seisin and warranty of title. |
| February 27, 2002: | Mr. Allen commences his own bankruptcy case staying Wells Fargo from foreclosing despite 13 months of missed payments. |
| January 23, 2003: | Court dismisses Mr. Allen's case with prejudice for 180 days, with mortgage payments even further behind. |
| March 21, 2003: | Mr. Allen executes deed conveying the Property to himself and Mrs. Allen as co-owners. |
| March 24, 2003: | Mr. Allen records deed and then files petition commencing Mrs. Allen's bankruptcy case. |
| March 27, 2003: | Wells Fargo, unaware of Mrs. Allen's ownership interest and of her bankruptcy case, sells the Property at foreclosure to Case Capitol Corporation. |
| May 27, 2003: | Mrs. Allen obtains a dismissal of her bankruptcy case without ever having filed schedules, a statement of financial affairs, or a chapter 13 plan. |

Mrs. Allen's bankruptcy case was an attempt to circumvent the bar against Mr. Allen's re-filing a bankruptcy case, and Mrs. Allen's ownership interest violated provisions of the Deed of Trust. Accordingly, her case was an abuse of the bankruptcy system, and was filed in bad faith.

The last-minute transfer to Mrs. Allen violated the Deed of Trust's due-on-transfer clause. Although Mrs. Allen claims, alternatively, that she had an ownership interest prior to Wells Fargo making the loan, she left Mr. Allen in the position to enter into the Deed of Trust which, as a matter of District of Columbia law, subjected whatever equitable rights she had in the property to Wells Fargo's superior rights. Moreover, the Deed of Trust contained a covenant of seisin and warranty of title representing that he owned the property, and that covenant and warranty were violated by her alleged undisclosed ownership interest. As a court of equity, the court was fully justified in not allowing Mrs. Allen's undisclosed interest in the property and the last-minute conveyance to her to defeat Wells Fargo's rights after the sole mortgagor (Mr. Allen) had been barred from filing bankruptcy.

In addition, the court concluded that Mrs. Allen's case could not have addressed Wells Fargo's debt as to which Mr. Allen was the sole mortgagor. Without re-conveying the Property to Mr. Allen, Mrs. Allen could not cure the breaches of the Deed of Trust provisions arising from her ownership interest, and those provisions could not be modified without doing an end-run around the bar under 11 U.S.C. § 1322(b)(2) that Mr. Allen faced, in his own case, against modifying his home mortgage. Decisions that have permitted retention of property despite a violation of a due-on-transfer clause are distinguishable as not involving any issue of circum-

vention of a bar against the actual mortgagor's filing bankruptcy.[4]

## II

### HARM TO THE ALLENS

If the annulment of the stays is kept in place and not stayed, Wells Fargo will be permitted to have the trustees under the Deed of Trust conclude their foreclosure sale to Case Capitol Corporation (if they did not do so already prior to learning of the bankruptcy case). Case Capitol Corporation will then be able to commence eviction proceedings against Mr. Allen, but Mr. Allen is hardly in a position to claim harm when he was barred from utilizing bankruptcy to address his mortgage problems.

Mrs. Allen does not even use the Property as her principal residence, so the loss of the Property would not deprive her of a residence. Moreover, with the shelter and delay occasioned by Mr. Allen's bankruptcy case, the Allens had months to sell the Property before foreclosure but failed to do so. The loss of whatever equity could have been realized in a non-forced sale can thus be laid at the Allens' feet.

It is not clear whether denying a stay pending appeal would moot the appeal,[5] thereby destroying Mrs. Allen's ownership of the Property she would retain in the event that the Allens were otherwise to prevail on appeal. Even if it would, that harm will have been suffered by one who did not bother to protect her asserted

interest in the Property by insisting on a recorded deed early on, who thus chose to let Wells Fargo believe that Mr. Allen was the sole owner, and who, after Wells Fargo made the loan, could not have received a deed to the Property without triggering the due-on-transfer clause.

The harm to the Allens, a matter of their own doing, does not outweigh the other factors, all of which counsel against staying the court's order.

## III

### HARM TO WELLS FARGO AND CASE CAPITOL CORPORATION

There is no evidence that Case Capitol Corporation has gone to settlement to close its foreclosure sale purchase of the Property. A stay will harm Wells Fargo by delaying its receipt of the foreclosure sale proceeds (if not already received).[6] If Case Capitol Corporation were able to back out of the foreclosure sale because of the delay occasioned by a stay, Wells Fargo would be harmed because it would be forced to incur added foreclosure expenses, and might be left worse off. Mr. Allen says that the foreclosure sale Wells Fargo held did not pay the Wells Fargo debt in full, leaving him facing the prospect of a deficiency judgment, and there is no guarantee that on a new foreclosure sale the deficiency would not be higher.

---

4. Moreover, for reasons discussed at length in the decision on the motion for reconsideration, those decisions assume, erroneously, that retention by the new owner of the property does not work a modification of the mortgage's due-on-transfer clause. *See, e.g., In re Threats*, 159 B.R. 241 (Bankr.N.D.Ill.1993) (stating the better rule).

5. *See Albany Partners*, 749 F.2d at 671 n. 1.

6. The record does not reveal whether the terms of the foreclosure sale, as often occurs, required Case Capitol Corporation to pay interest on its purchase price until that purchase price is paid to Wells Fargo. Such a provision might protect Wells Fargo with respect to the time value of money, but would mean that any delay of closing of the foreclosure sale would thus cost Case Capitol Corporation interest charges.

In addition, the purchaser at the foreclosure sale, Case Capitol Corporation, is suffering harm. A stay would mean that it could not take steps to evict Mr. Allen from the Property. Delay in evicting Mr. Allen will delay realization by Case Capitol Corporation of the benefits of ownership. Upon evicting Mr. Allen it could rent the Property or re-sell it. The delay in receipt of rents or of re-sale proceeds of course substantially harms Case Capitol Corporation because of the time value of money. In this same regard, a stay might result in Case Capitol Corporation receiving a lower re-sale price upon electing to pursue a re-sale: a stay might prevent a re-sale while mortgage rates are still historically low (albeit substantially higher than during a brief period after the foreclosure sale was completed), and thus conducive to receiving a favorable price for the Property.

Moreover, the record is unclear whether Case Capitol Corporation has actually closed the sale. If it has not, a stay would subject it to the possibility that the capital it might have to borrow to complete the sale once an appeal is completed may not be available on as favorable terms as are currently available.

The Allens have not offered to post a supersedeas bond that would protect Wells Fargo and Case Capitol Corporation against any losses that would be suffered by reason of a stay pending appeal. Such a bond would have to be substantial because of the uncertainties of the extent of harm that might befall Wells Fargo and Case Capitol Corporation. In any event, posting such a supersedeas bond would be insufficient to warrant granting a stay

pending appeal, given the great unlikelihood of the Allens succeeding on appeal and the abuse that would be prolonged by allowing the Allens to continue to frustrate Wells Fargo's legitimate foreclosure efforts.[7]

## IV

### THE PUBLIC INTEREST

This is a private dispute, but there is a public interest (1) in not allowing abusive bankruptcy filings such as this to delay mortgagee's foreclosure efforts, and (2) in assuring the integrity of completed foreclosure sales that do not interfere with the goals of bankruptcy law. Delaying annulment here would give rise to the very abuse that this court found arose from Mrs. Allen's bankruptcy case, and would interfere with the legitimate commercial expectations of Wells Fargo and the purchaser at the foreclosure sale.

For all of these reasons, it is

ORDERED that the Allens' motion for a stay pending appeal is DENIED. It is further

ORDERED that with respect to a stay pending the Allens' seeking from the district court a stay pending appeal, the court's prior interim stay order (Docket Entry No. 48) is amended to provide that the order annulling the automatic stay and the co-debtor stay (Docket Entry No. 34) shall be stayed until September 12, 2003, and that if the Allens have filed a motion for stay with the district court by September 12, 2003, then the order annulling stays (Docket Entry No. 34) shall remain

---

7. Moreover, although not decisive to the court's deciding to deny a stay, the court notes that a supersedeas bond might be an incomplete remedy because it would subject Wells Fargo and Case Capitol Corporation to the attorney's fees and expenses that proving their losses would entail, and it is unclear

whether such fees and expenses could be recovered from a bond as an element of damages. Because there is scant likelihood of success on appeal, there is no reason to subject Wells Fargo and Case Capitol Corporation to that type of added cost.

stayed until the earlier of September 26, 2003, or the date the district court enters an order denying such motion for stay pending appeal.